# Richmond.

## BYRD v. COMMONWEALTH.

### January 12th, 1893.

CRIMINAL PROCEEDINGS—*Voluntary manslaughter—Case at bar.*—Upon consideration of the evidence in this case—

HELD:

> The verdict of voluntary manslaughter was properly rendered, and no error in refusing to set it aside, nor in giving and refusing the instructions mentioned in the opinion.

Error to judgment of circuit court of Louisa county, rendered October 10th, 1892, refusing writ of error to judgment of county court of said county, rendered July 22d, 1892, whereby the plaintiff in error, John Byrd, was, in accordance with the verdict of the jury finding him guilty of voluntary manslaughter of one Zach. Lewis, sentenced to imprisonment in the penitentiary for one year.

*J. G. Field,* for plaintiff in error.

*Attorney-General R. Taylor Scott,* for commonwealth.

LACY, J., delivered the opinion of the court.

The assignments of error here are, first, to the refusal of the court to set aside the verdict and grant to the accused a new trial upon the ground that the verdict is contrary to the law and the evidence; and secondly, to the giving and the refusing of certain instructions by the trial court.

The evidence, as certified, was, briefly, as follows:

On Sunday, December 13th, 1891, some boys, of whom the plaintiff in error (who was fifteen or sixteen years of age) was one, engaged in playing base-ball in the said county of Louisa. The plaintiff in error was the leader of one nine, and one Zach. Lewis, now deceased, was the leader of the other nine.

The game progressed to the disadvantage of the Lewis nine, and, some larger boys coming upon the ground, Lewis declared his purpose to discharge or dispense with some of his boys and take others in. The plaintiff in error objected to this, and, when Lewis persisted in his purpose, the plaintiff in error stopped playing, and said he would leave the grounds, and proceeded to put on his coat. Lewis used abusive epithets towards all who would refuse to play for the stated cause, when Byrd, the plaintiff in error, asked him, " Do you apply that to me ? " Lewis answered " Yes " ; and Byrd said, " You are another ———." Whereupon Lewis stepped back, and picked up a base-ball bat, and approached near to Byrd. One witness said he approached and stood leaning on the bat ; and some of the witnesses say that Byrd asked Lewis " did he get that bat to strike him," and Lewis said " Yes "; he would " mash out his brains."

Byrd then ran back twenty or twenty-five feet and picked up two rocks, and turned and approached two or three steps nearer to Lewis, the deceased ; that Lewis stood passive, leaning on his bat, as is stated by some of the witnesses, or swinging it in his hand, as others state ; but he did not approach Byrd, nor follow him up when he retreated, nor threaten to strike him after he retreated. But Byrd threw a rock at him, weighing sixteen and one-half ounces, four and one-half inches long, two and one-half inches thick, and three and three-fourths inches wide, rough and jagged. Lewis dodged, and the rock struck him on the head and knocked him down on his hands and knees ; when Byrd threw the second rock at him, but missed him ; when Lewis ran behind a by-stander, and

begged for protection, and said he was just playing, and soon went off, saying it was all right, when the plaintiff in error threw the bat at him as he left. Lewis' skull was fractured; blood clotted on the brain; he went into a stupor, and died that night. What was the character of this homicide?

It was not murder, because there appears to have been no malice, express or implied, and proceeded not from wickedness of the heart, but from the sudden heat of the passions. And Mr. Blackstone says that the difference consists principally in this: That manslaughter, when voluntary, arises from the sudden heat of the passions; murder, from the wickedness of the heart. And defines manslaughter as the unlawful killing of another, without malice, express or implied, which may be either voluntarily, upon a sudden heat, or involuntarily, but in the commission of some unlawful act. 4 Bl. Com. 190.

If, upon a sudden quarrel, two persons fight, and one of them kills the other, this is manslaughter. Id. 191; *Mc-Whert's Case,* 3 Gratt. 605; *Read's Case,* 22 Gratt. 937.

In this case there is no evidence of any previous grudge or ill will, and there probably was none; and the killing was from sudden heat of blood, growing out of the quarrel which arose between the two. And it is urged in the defense of the plaintiff in error that the homicide in this case was not only not malicious, but that it was done in self-defense, *se defendendo,* upon a sudden affray, and is excusable.

In self-defense a man may protect himself from an assault or the like, in the course of a sudden broil, or quarrel, by killing him who assaults him. But this right of self-defense does not imply the right of attacking, and one cannot legally exercise this right of preventive defense but in sudden and violent cases, when certain and immediate suffering would be the consequence of waiting for the assistance of the law. Mr. Blackstone saying, that to excuse homicide by the plea of self-defense, it must appear that the slayer had no other possible

(or at least probable) means of escaping from his assailant, and that he killed the assailant to avoid his own destruction.

Mr. Bishop says (I., 844): While it is lawful to kill a man in self-defense, still his mere assault with the fist will not justify the instant taking of his life by a stab. Yet, one assaulted by another, who has threatened to kill him, is not bound to run in the particular instance, thus increasing his danger by encouraging the assailant to repeat the attempt when he will be less prepared to resist. And it is a familiar doctrine that one assaulted with murderous intent may, to avert the felonious result, take the aggressor's life. And though his justification rests also on the right of self-defense, it reposes equally on the authority with which the law invests every man to resist the commission of a felony. Id. 850.

" There must be (to justify the party in slaying his adversary) some act menacing present peril, or something in the attending circumstances indicative of a present purpose to make the apprehended attack. The act so done, or circumstances thus existing, must be of such a character as to afford a reasonable ground for believing there is a design to commit a felony, or to do some serious bodily harm, and imminent danger of carrying such design into immediate execution. Under these circumstances the killing will be justifiable, although it should afterwards turn out that the appearances were deceptive, and there was, in fact, no design to commit a felony, or to do great personal injury. A man may repel force by force in defense of his person or property against one who manifestly endeavors, by violence or surprise, to commit a known felony upon either ; and in such cases is not bound to retreat, but may pursue his adversary until he has freed himself from all danger." *Stoneman's Case*, 25 Gratt. 900, opin. Staples, Judge.

And while the law does not require that there should be actual danger, there must be reasonable ground for apprehending that such danger exists. Id.

In that case Judge Staples cites with approval the opinion of Cowen, J., in *McCleod's Case*, 1 Hill N. Y. R. 391, as saying : " A force which the defendant has the right to resist must itself be within striking distance. It must be menacing, and apparently able to inflict physical injury, unless prevented by the resistance which he opposes." In this case, when the threat was made to strike Byrd with the base-ball bat, he retreated out of the reach of the bat, to gather the stones. He was not pursued nor further threatened ; he was not in danger of any immediate injury, nor threatened with any. It is stated that the deceased stood still, leaning on the bat, and said nothing. This was a peaceful attitude, which threatened no violence. The plaintiff in error being angered, advanced upon him, and renewed the conflict, and commenced the fight, in fact. The law, in humanity, will not imply malice because of the sudden heat of blood, and so make the killing murder, in regard for human frailty, notwithstanding the deadly character of the missile employed. But as a person must be held to intend what was the reasonable and natural result of his act, the homicide was unlawful, not being in self-defense, and was voluntary manslaughter.

Our law prescribes the penalty for this offense to not less than one nor more than five years' confinement in the penitentiary. The jury affixed the lowest period allowed by the law, and the trial court refused to set aside the verdict because contrary to the law and the evidence, and in that action we think there was no error.

The assignments of error, as to the court's action in amending the instructions asked for by the accused, may be briefly disposed of. In the first instruction, as to the right of self-defense : " When the person was assaulted, or is threatened," inserted the words, " *by the attitude and conduct of the other*, hath the right;" &c. This did not change the sense of the instruction in any degree; and was immaterial. And in the

second instruction, upon the same subject, his right to throw the stones in self-defense, if he believed that the deceased intended to kill him or do him some grievous bodily harm, inserted: "*And that when he stood where the stone or stones were picked up by him he was not, or in good faith believed that he was not, out of danger from the assault of the deceased,*" then the said John Byrd was acting in self-defense, and the jury should find him not guilty. That this amendment was proper is shown by what has been already said, and the authorities cited. If he was, or believed himself, out of danger, he cannot justify the killing. And in the third instruction inserting, on the same subject, the words: "*If he was not, when he stood where the stone or stones were picked up by him, or in good faith believed that he was not, out of danger from the assault of the deceased,*" the jury must find the accused not guilty, &c., was proper for the same reason.

On the motion of the commonwealth, the court gave the following instruction, which is excepted to:

"The court instructs the jury that, upon the evidence in this case, they cannot convict the accused of murder, either in the first or second degree, but may convict of either voluntary or involuntary manslaughter. If the jury believe from the evidence that the accused threw a rock at Zach. Lewis, Jr., striking him upon the head and causing his death, then they may convict the accused of voluntary manslaughter, unless they believe that the throwing of the rock at said Lewis was necessary to repel an assault which threatened death or great bodily harm, or unless said Byrd had reasonable ground for believing, and did believe, that the throwing said rock was necessary to repel said assault. No mere words, however insulting, are sufficient to justify a resort to force. To justify the accused in exercising force, it must have been to repel force—that is, an actual assault upon him—and necessary, or in good faith believed by the accused to be necessary, to repel such assault."

There is no ground upon which the accused can complain of any injury from this instruction, and there is no error therein of which he can complain, as appears from a discussion of the right of self-defense which has gone before.

We perceive no error in the judgment of the county court, and the judgment of the circuit court, refusing a writ of error to the same, is affirmed.

FAUNTLEROY, J., *dissented.*

JUDGMENT AFFIRMED.