# Richmond

JAMES WILKINS V. COMMONWEALTH.

November 25, 1940.

Record No. 2309.

Present, Campbell, C. J., and Holt, Hudgins, Gregory,
Eggleston and Spratley, JJ.

The opinion states the case.

*Thomas H. Howerton,* for the plaintiff in error.

*Abram P. Staples, Attorney-General,* and *Walter E. Rogers, Special Assistant,* for the Commonwealth.

HOLT, J., delivered the opinion of the court.

In Waverly in a negro restaurant on the 3rd of December, 1939, at about eleven o'clock at night, James Wilkins shot and killed Willie Moyler. For that he has been tried, convicted of murder in the second degree, and sentenced to confinement in the State penitentiary for fifteen years.

Wilkins stood by the restaurant counter talking to a young woman. Moyler came into the room, saw Wilkins, and said: "You are the one that has been talking about me." And then, without more, he knocked him across the room. He hit him again and knocked him down; while on the floor Wilkins drew his pistol and got up. Moyler dared Wilkins to shoot him, and Wilkins asked Moyler to go away. Instead of doing this he threatened to kill him and again knocked him down. Wilkins got up and shot him. All of this took place within the time taken in its telling. Wilkins left the restaurant room, threw his pistol away, went to his home and was there soon afterwards arrested.

These men were strangers to each other. Wilkins knew Moyler by sight but had never spoken to him and did not know what he was talking about. There is nothing to in-

dicate a previous grudge. There could have been no premeditation, and there was little time for meditation. The difficulty was brought on by Moyler, and certainly in its inception Wilkins was without fault.

A homicide committed in hot blood, growing solely out of the combat for which a defendant was not responsible, is not murder.

In *Richardson* v. *Commonwealth,* 128 Va. 691, 104 S. E. 788, this instruction was given:

"6. The court instructs the jury that a mortal wound given with a deadly weapon, in the previous possession of the slayer, without any or upon very slight provocation, is *prima facie* wilful, deliberate and premeditated killing, and throws upon the accused the necessity of proving extenuating circumstances."

These are the facts upon which it was predicated:

Richardson had attended a county fair and took with him as his guests three young ladies. Upon their return in an automobile, driven for hire, the driver took up another passenger, who was somewhat intoxicated and who conducted himself in a free and easy manner towards these young ladies, strangers to him. "The deceased quit his conduct for a few minutes, when the male passenger, aforesaid (Richardson), addressed the deceased and asked him if he was asleep. The deceased said 'No,' and then leaned over on the accused again in the same way as previously, and the accused thought that the deceased had hold of the girl again, and the accused said to the deceased, 'Sit up.' And deceased replied, 'I will sit any way I God damned please;' seized the accused by the throat, struck the accused in the face with his fist, pulled the accused over down into the seat, had him by the throat, and was 'up over him;' and while the accused was being thus choked, he got a pistol out of his pocket and shot the deceased, causing his subsequent death."

The accused was convicted of second-degree murder. In the light of these facts the court held that the instruction quoted was not applicable. The case was reversed and re-

manded for a new trial. The court, commenting upon the instruction quoted and upon the facts, said:

"It has been long settled that where a homicide is committed in the course of a sudden quarrel, or mutual combat, or upon a sudden provocation and without any previous grudge, and the killing is from the sudden heat of passion growing solely out of the quarrel, or combat, or provocation, it is not murder, but is manslaughter only—voluntary manslaughter, if there be no further justification, and involuntary manslaughter if the killing be done in the commission of some lawful act, such as in justifiable self-defense. *Byrd's Case* [*Byrd* v. *Commonwealth*], 89 Va. 536, 16 S. E. 727; *Read's Case* [*Read* v. *Commonwealth*], 22 Gratt. (63 Va.) 924."

This statement of the law was adopted by Campbell, J., in *Brown* v. *Commonwealth,* 138 Va. 807, 122 S. E. 421; he also quoted from *Read's Case, supra,* to this effect:

"Where a homicide is committed under such circumstances, without any previous grudge, even if the killing be not done in self-defense, it has also been long settled that the test of whether the killing is from the sudden heat of passion aforesaid is found in the nature and degree of the provocation and the manner in which it is resented."

In the instant case, Moyler was the aggressor and provocation on his part was gross. Wilkins did nothing at all to bring about trouble or an assault upon himself.

The contention of the Commonwealth is that Wilkins, during the progress of the trial, relied upon self-defense but the facts did not support him. Wilkins said that "he was sorry for what he had done," but that he thought he had to do it. The plea of self-defense and of passion, engendered by an unprovoked assault, are not in conflict with each other. *Richardson* v. *Commonwealth, supra.* It is to be expected that one assaulted without provocation will do what appears to be necessary to defend himself. Here Wilkins was knocked across the room and twice knocked down by a stranger. It was an assault which he had no reason

to look for. If this be not enough to humiliate and anger one, it is hard to say what would be.

█ This which was said in *Richardson's Case* applies here:

"Now in the case before us there was no previous grudge, the homicide was committed in the course of a sudden quarrel, in mutual combat, upon a sudden provocation, which was unquestionably resented, and the provocation, was more than 'very slight.' *Whether the evidence shows that the killing was done in justifiable self-defense, it is unnecessary for us to decide;* but it was certainly accompanied with such circumstances of extenuation that malice, and hence murder, could not be presumed from the fact of the killing. There was no other evidence of malice in the case. This being so, there was no evidence whatever before the jury to support their verdict of murder in the second degree." (Italics supplied.)

█ That case was reversed and a new trial awarded. For the same reasons we reverse this case and remand it for a new trial. It will be for the jury to say if the offense charged be voluntary manslaughter or justifiable self-defense.

*Reversed and remanded.*