COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Annunziata and Senior Judge Coleman
Argued at Richmond, Virginia


SHIRLEY R. RHODES, S/K/A
 SHIRLEY ROGER RHODES
                                        OPINION BY
v.    Record No. 2975-01-2        JUDGE ROSEMARIE ANNUNZIATA
                                        JULY 29, 2003
COMMONWEALTH OF VIRGINIA


           FROM THE CIRCUIT COURT OF BRUNSWICK COUNTY
                    James A. Luke, Judge

          Carson E. Saunders, Jr. (Vincent Law Firm, on
          briefs), for appellant.

          Richard B. Smith, Senior Assistant Attorney
          General (Jerry W. Kilgore, Attorney General,
          on brief), for appellee.


     Rhodes was convicted by a jury of the first-degree murder

of Mary Lou Orloff and was sentenced to life imprisonment.  On

appeal, he argues the trial court committed reversible error

when it refused to instruct the jury on "heat of passion."  For

the reasons that follow, we affirm.

                            Facts

     On appeal, when the issue is a refused jury instruction,

"[the evidence is viewed] in the light most favorable to the

proponent of the instruction."  Lynn v. Commonwealth, 27

Va. App. 336, 344, 499 S.E.2d 1, 4-5 (1998) (citation omitted).

So viewed, the evidence shows that on Sunday, July 23, 2000,

Mary Lou Orloff returned to the home she shared with Rhodes at

approximately 5:30 p.m. She and Rhodes began arguing after he requested her assistance in paying a bill in the amount of $4,500. In the course of the argument she cursed at him, and "got to pointing and stabbing me in my face with her fingers." Officer James Huddle testified and read for the jury the written statement Rhodes made to him after Orloff's body was discovered. Huddle stated that, after Rhodes told him that Orloff put her fingers in his face while they argued, Rhodes demonstrated the movement for him and it was "sort of like pointing." Rhodes hit Orloff in the stomach, and she put her hands in a clawing position. He then hit her in the face, and she fell to the floor and threatened to put a bullet in him. Rhodes stated he might have stunned her with a stun gun at that point. After Orloff fell to the ground, Rhodes went outside to get trash bags, which he used to encase Orloff's body, holding one of the bags closely around her head for a few minutes. Rhodes dragged Orloff out of the house and put her inside the back of her pickup truck. He drove to Suffolk where he buried the body, using lime inside and outside the bag.

Rhodes abandoned the truck near U.S. Highway 301 and got a ride home from a friend. On July 24, 2000, at approximately 11:00 a.m., one of Orloff's co-workers called in a missing person's report because Orloff had not shown up for work. At approximately 3:00 p.m., on July 24, 2000, Rhodes called the Brunswick County Sheriff's Department to report Orloff as

-

missing. Earlier that day, Lieutenant Raymond R. Bell of the Sussex County Sheriff's Department observed Orloff's truck on a path off of U.S. Highway 301.  The investigation into the abandoned vehicle ultimately led the police to Rhodes, who confessed on July 27, 2000 to killing Orloff.  According to autopsy reports, Orloff's cause of death was "[a]sphyxia . . . due to lack of oxygen to the body."

The jury was instructed that they could find Rhodes guilty of voluntary manslaughter if they found the killing was committed while in mutual combat:

> If you find that the Commonwealth has failed to prove beyond a reasonable doubt that the killing was malicious but that the Commonwealth has proved beyond a reasonable doubt that the defendant killed Mary Lou Orloff and further that the killing was the result of an intentional act and that the killing was committed while in mutual combat, then you shall find the defendant guilty of voluntary manslaughter.

The trial court also gave the following instructions to the jury on malice:

> Malice is that state of mind which results in the intentional doing of a wrongful act to another without legal excuse or justification, at a time when the mind of the actor is under the control of reason. Malice may result from any unlawful or unjustifiable motive including anger, hatred, or revenge.  Malice may be inferred from any deliberate willful and cruel act against another, however sudden.
>
> Words alone, no matter how offensive or insulting they may be, are never sufficient

-

provocation to reduce the offense of murder
to manslaughter.

Rhodes proffered the following instruction to the trial court:

Heat of passion excludes malice when
that heat of passion arises from provocation
that reasonably produces an emotional state
of mind such as hot blood, rage, anger,
resentment, terror or fear so as to
demonstrate an absence of deliberate design
to kill, or cause one to act on impulse
without conscious reflection.  Heat of
passion must be determined from
circumstances as they appeared to defendant
but those circumstances must be such as
would have aroused heat of passion in a
reasonable person.

If a person acts upon reflection or
deliberation, or after his passion has
cooled or there has been a reasonable time
or opportunity for cooling, then the act is
not attributable to heat of passion.

The trial court refused Rhodes's proffered instruction, and the

jury convicted him of first-degree murder.

## Analysis

On appeal, Rhodes contends the trial court erred in

refusing to give his proffered instruction on "heat of passion."

We find this contention is without merit.

Jury instructions are properly refused if not supported by

more than a scintilla of evidence.  Commonwealth v. Donkor, 256

Va. 443, 445, 507 S.E.2d 75, 76 (1998).  However, "[i]f a

proffered instruction finds any support in credible evidence,

its refusal is reversible error."  McClung v. Commonwealth, 215

Va. 654, 657, 212 S.E.2d 599, 602 (1975).  "A reviewing court's

-

responsibility in reviewing jury instructions is 'to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.'" Darnell v. Commonwealth, 6 Va. App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)).

> [W]here a homicide is committed in the course of a sudden quarrel, or mutual combat, or upon a sudden provocation and without any previous grudge, and the killing is from the sudden heat of passion growing solely out of the quarrel, or combat, or provocation, it is not murder, but is [voluntary] manslaughter . . . if there be no further justification, and involuntary manslaughter if the killing be done in the commission of some lawful act, such as in justifiable self-defense.

Wilkins v. Commonwealth, 176 Va. 580, 583, 11 S.E.2d 653, 654 (1940) (citing Byrd v. Commonwealth, 89 Va. 536, 16 S.E. 727 (1893); Read v. Commonwealth, 63 Va. (22 Gratt.) 924 (1872)).

A killing done in the heat of passion and upon reasonable provocation will reduce a homicide from murder to voluntary manslaughter. Barrett v. Commonwealth, 231 Va. 102, 105-06, 341 S.E.2d 190, 192 (1986) (citing Martin v. Commonwealth, 184 Va. 1009, 1016-17, 37 S.E.2d 43, 46 (1946)). "Heat of passion refers to the furor brevis which renders a man deaf to the voice of reason." Caudill v. Commonwealth, 27 Va. App. 81, 85, 497 S.E.2d 513, 514-15 (1998) (citation omitted). "[It] excludes malice when provocation reasonably produces fear [or anger] that

-

causes one to act on impulse without conscious reflection." Graham v. Commonwealth, 31 Va. App. 662, 671, 525 S.E.2d 567, 571 (2000). "Heat of passion is determined by the nature and degree of the provocation and may be founded upon rage, fear or a combination of both." Barrett, 231 Va. at 106, 341 S.E.2d at 192.

Applying these principles to the case at bar, we find the record does not contain a scintilla of evidence to support a heat of passion instruction. Rhodes stated that, when Orloff returned home on July 23, 2000, they argued about a credit card bill. Orloff cursed and yelled at him and started pointing and stabbing her fingers at Rhodes's face. Rhodes responded by punching Orloff in the stomach and in the face until she fell to the ground and threatened to "put a bullet in him." She did nothing more to voluntarily engage in combat with Rhodes. Words alone, no matter how insulting, are never sufficient to constitute heat of passion. Canipe v. Commonwealth, 25 Va. App. 629, 642, 491 S.E.2d 747, 753 (1997); compare Belton v. Commonwealth, 200 Va. 5, 7-8, 104 S.E.2d 1, 6 (1958) (finding reversible error where trial court refused an instruction on "heat of passion," where defendant had arrived home on two occasions and discovered victim, his wife, in a nightgown, drinking whiskey with another man and she told him on the night she was killed, "[T]his is my body and I give to . . . who I want to . . . .").

-

Furthermore, Orloff was 5 feet 2 inches tall and weighed 160 pounds as compared to Rhodes, who is approximately 6 feet 3 inches tall and weighs over 300 pounds. Orloff did not possess a gun, or any other means to seriously harm Rhodes, and did nothing more than curse at Rhodes, point and stab her fingers in his direction, and verbally threaten to shoot him. Such acts did not establish Orloff's "imminent intention to kill or seriously harm" Rhodes, Smith v. Commonwealth, 17 Va. App. 68, 71-72, 436 S.E.2d 414, 416 (1993), and would not render a reasonable person "deaf to the voice of reason." Caudill, 27 Va. App. at 85, 497 S.E.2d at 514-15; compare Belton, 200 Va. at 9, 104 S.E.2d at 4 (further noting that where victim hit the defendant while they were arguing, "heat of passion" instruction was warranted). In short, not a scintilla of evidence establishes reasonable provocation on the part of the victim.

Rhodes manifestly proffered the heat of passion instruction to develop and explain one of the elements of "voluntary manslaughter based on mutual combat," which was made part of the court's finding instruction. It cannot logically be said, however, that an instruction without evidentiary support is properly given because it clarifies or develops law presented in another instruction that is also without evidentiary support. These are the circumstances in which the proffered instruction must be evaluated in this case. Notwithstanding the insufficient evidentiary predicate underlying a heat of passion

-

instruction, the court included in its finding instruction a voluntary manslaughter theory of conviction. To be sure, the voluntary manslaughter instruction was given without objection from either party and we address it not to show reversible error, but to make clear the underlying factual circumstances which generated the defense's perceived need for further instruction. It cannot follow that an erroneous instruction derives validity because it serves to explain another instruction, which itself has been erroneously given, albeit without objection. Because not a scintilla of evidence supports a voluntary manslaughter theory upon which a conviction could lie in this case, Rhodes's proffered instruction would only serve to compound the error and it was properly denied.

Accordingly, we find no error in the trial court's decision and affirm Rhodes's conviction.[1]

Affirmed.

---

[1] The Commonwealth filed an objection to Rhodes's designation of the record on appeal, contending he included material not "germane to the question[s] presented." Rule 5A:25(c)(3). Specifically, the Commonwealth argues that neither the pretrial motion transcript, the sentencing transcript, nor the voir dire of the jury, has any relevance to the question of whether the trial court erred in refusing a "heat of passion" instruction. We agree and direct the trial court, in determining counsel's costs and necessary direct out-of-pocket expenses, that counsel not be reimbursed for the costs and expenses related to these irrelevant items.

-

Benton, J., dissenting.

The trial judge determined that the evidence was sufficient to support a jury instruction on voluntary manslaughter. Although the judge instructed the jury that they could find voluntary manslaughter as a lesser-included offense, he refused to instruct the jury concerning heat of passion. The instruction clearly was deficient because it failed to inform the jury of an essential ingredient of voluntary manslaughter. Thus, I would hold that the error was prejudicial and, therefore, reversible.

I.

"Because the issue on appeal deals with the circuit court's refusal of [an element of] the lesser-included offense instruction . . . and even though the Commonwealth prevailed at trial, we must view the evidence on this issue in the light most favorable to the defendant, the proponent of the instruction." Commonwealth v. Leal, 265 Va. 142, 145, 574 S.E.2d 287, 287 (2003); Blondel v. Hays, 241 Va. 467, 469, 403 S.E.2d 340, 341 (1991). Viewed in this light, the evidence proved Shirley R. Rhodes and Mary Lou Orloff resided together. According to Rhodes's confession, he and Orloff argued on July 23 about their household finances. During the argument Orloff began "stabbing [Rhodes] in [his] face with her fingers." In response, Rhodes hit her and, during the fight, punched her face. After Orloff fell to the floor and threatened "to put a bullet in [him],"

-

Rhodes used a stun gun on her.  He then put a "trash bag over her head to clean up," enclosed her body in a bag, and put lime into the bag.  He buried Orloff's body in a wooded area.

Four days later, the police uncovered Orloff's badly decomposed body in a bag with limestone and rock salt.  The officer who heard and transcribed Rhodes's confession testified that he "was under the impression that [Rhodes's conduct] was a continuance movement . . . was just one continued fluid movement from the beginning of the confrontation until he drug her out to the front steps."  When he asked Rhodes, "When did you decide to kill her," Rhodes said:

> I didn't mean to kill her.  I think when
> I hit her in the face -- I think I killed
> her by pushing her nose bone up into her
> brain.

The assistant chief medical examiner testified that she determined the cause of death to be asphyxia because none of the bruising on the body appeared to result from a lethal blow.  She further explained her conclusion as follows:

> Well, in this case the diagnosis of
> asphyxia would have been made because she is
> wrapped in a heavy plastic which would
> exclude her -- which would prevent her from
> breathing air and especially if something
> was held over her face.  But the plastic
> sheeting alone would have prevented her from
> breathing air.  She wouldn't get oxygen.
> She could become unconscious and pass out
> and eventually she would die.

Because this evidence raised a factual issue whether Rhodes believed Orloff was dead when he put the plastic bags over her,

-

the trial judge properly instructed the jury that if the Commonwealth failed to prove the killing was malicious, the jury could find voluntary manslaughter.  In pertinent part, he instructed the jury as follows:

> If you find that the Commonwealth has failed to prove beyond a reasonable doubt that the killing was malicious but that the Commonwealth has proved beyond a reasonable doubt that the defendant killed Mary Lou Orloff and further:
>
> 1. That the killing was the result of an intentional act; and
>
> 2. That the killing was committed while in mutual combat then you shall find the defendant guilty of voluntary manslaughter . . . .

## II.

"Manslaughter . . . is the unlawful killing of another without malice."  Barrett v. Commonwealth, 231 Va. 102, 105, 341 S.E.2d 190, 192 (1986).

> "To speak of a homicide as having been committed with malice aforethought and in sudden passion, upon reasonable provocation is a legal solecism.  'Malice aforethought' implies a mind under the sway of reason, whereas 'passion,' while it does not imply dethronement of reason, yet is the furor brevis which renders a man deaf to the value of reason, so that, although the act done was intentional of death, it was not the result of malignity of heart, but imputable to human infirmity.  Passion and malice are therefore inconsistent motive powers, and hence an act which proceeds from the one cannot also proceed from the other. . . . Malice excludes passion.  Passion presupposes the absence of malice.  In law they cannot coexist.  Therefore, if an act

-

of killing, prompted by malice, would be murder, it is only manslaughter when it springs from passion."

Belton v. Commonwealth, 200 Va. 5, 9-10, 104 S.E.2d 1, 4-5 (1958) (citation omitted)

The instruction the judge gave to the jury concerning manslaughter was premised upon evidence of a killing arising from a quarrel and mutual combat.

"It has been long settled that where a homicide is committed in the course of a sudden quarrel, or mutual combat, or upon a sudden provocation and without any previous grudge, and the killing is from the sudden heat of passion growing solely out of the quarrel, or combat, or provocation, it is not murder, but is manslaughter only -- voluntary manslaughter, if there be no further justification, and involuntary manslaughter if the killing be done in the commission of some lawful act, such as in justifiable self-defense."

Wilkins v. Commonwealth, 176 Va. 580, 583, 11 S.E.2d 653, 654 (1940) (citations omitted; emphasis added). Applying these same principles in various circumstances, the Supreme Court has held that "[w]hen a homicide is committed in the course of a sudden quarrel or broil, or mutual combat, . . . and without any previous grudge, the offence may be murder or manslaughter, according to the circumstances of the case." Read v. Commonwealth, 63 Va. (22 Gratt.) 924, 937-38 (1872). Thus, "[i]t is perfectly true that where homicide occurs in the course of a sudden quarrel, mutual combat, . . . and the killing is from passion growing solely out of the provocation, the offense

-

is manslaughter and not murder."  Ballard v. Commonwealth, 156

Va. 980, 993, 159 S.E. 222, 226 (1931).  Likewise, evidence of

"passion brought on by an unlawful assault may reduce the

homicide to manslaughter."  Moxley v. Commonwealth, 195 Va. 151,

158, 77 S.E.2d 389, 393 (1953).

Without an instruction concerning heat of passion, the

voluntary manslaughter instruction was prejudicially deficient.

By failing to inform the jury concerning heat of passion, the

trial judge permitted the jury to conclude that the furor

brevis, which arose during the quarrel and mutual combat, was an

indicia of malice only.  For he instructed the jury as follows:

> Once the Commonwealth has proved there
> was an unlawful killing, then you are
> entitled to infer there was malice. . . .
> Malice may result from any unlawful or
> unjustifiable motive including anger,
> hatred, or revenge.  Malice may be inferred
> from any deliberate willful and cruel act
> against another, however sudden.

The jury had no basis to know that a killing growing out of

a quarrel and combat was not necessarily malicious and that this

was a circumstance sufficient to prove manslaughter if done in

the heat of passion.  Thus, even if the jury believed Rhodes's

actions were being directed by passion rather than reason, the

instructions did not inform them that this was the predicate for

a finding of manslaughter.  Put another way, without an

instruction on heat of passion, even if the jury believed Rhodes

-

acted in passion, they could still find, based on the instructions, that he acted with malice.

                                    III.

The majority disposes of this case on an issue that was neither raised at trial nor briefed by the Commonwealth. In particular, the majority asserts that the record contains insufficient evidence to support a voluntary manslaughter instruction based on mutual combat. Thus, the majority concludes that a heat of passion instruction that explained one of the manslaughter elements was not warranted because it "derives validity" from "another instruction, which itself has been erroneously given." To support that conclusion, the majority posits that after Orloff cursed, stabbed her fingers in Rhodes's face, and threatened to shoot him, she did nothing more to voluntarily engage in combat with Rhodes. This view of the evidence arbitrarily and impermissibly divides the events into two time frames and fails to view the evidence in the light most favorable to the proponent of the instruction. See Blondel, 241 Va. at 469, 403 S.E.2d at 341.

On the evidence in the record, the jury could have found that although Orloff did nothing after she threatened to shoot Rhodes, she did plenty in the nature of "combat" or provocation immediately before that. Moreover, the majority's view of the record is contrary to the testimony of the officer who heard Rhodes's confession and testified that Rhodes's conduct "was

                                    -

just one continued fluid movement from the beginning of the

confrontation until he drug her out to the front steps."  This

evidence clearly was enough to pass the "scintilla of evidence"

threshold and to raise a factual issue for the jury.

Furthermore, the record reflects that the Commonwealth did

not object to the trial judge's instruction to the jury that it

was to assess mutual combat or provocation.  Indeed, it appears

that this was a lesser-included offense instruction that may

have been proposed by the Commonwealth because of the lack of

contrary evidence concerning the events surrounding Orloff's

death.  In any event, the manslaughter instruction was supported

by the following principles:

> A jury, not the trial court, weighs the
> evidence and assesses the credibility of the
> witnesses.  It is immaterial that the jury
> might have rejected the lesser-included
> offense; if there is evidence tending to
> support the lesser offense, a trial court
> errs in refusing an instruction thereon.

Barrett, 231 Va. at 107, 341 S.E.2d at 193.  Indeed, the trial

judge's decision to instruct the jury on manslaughter was

consistent with the principles in Belton and similar decisions

of the Supreme Court.  See e.g. Briggs v. Commonwealth, 82 Va.

554, 565 (1886) (holding that "[i]f upon being assaulted, the

passion of the assaulted person become[s] greatly excited, and

under that impulse he kill[s] his assailant, though it be with a

deadly weapon, the offence is manslaughter only").

-

The Supreme Court reversed the murder conviction in <u>Belton</u> because the trial judge failed to instruct the jury on heat of passion. Belton "shot and killed his wife" but contended he acted in the heat of passion upon reasonable provocation. 200 Va. at 6, 104 S.E.2d at 2. Similar to the present case, the evidence in <u>Belton</u> proved a simple argument escalated to the following events:

> "I asked her about Lonza. So she said, 'If you think I'm going with Lonza, you ask him. If you beat him - I hope he beat hell out of you.' . . . So she told me, said, 'That's right - this my body and I give it to my - who I want to, and this is your money, and I spend it on who I want to.' She hit me - I can't remember exactly how it was. So I think she got out of the car - I think she got out of the car, and I think she was going to get some flowers . . . then I called her and next thing I saw her on the ground, and then when I saw her on the ground after I come to myself in some kind of way, I called her, and when I called her she wouldn't say anything. . . . I remember one shot and I saw her on the ground - and I saw her on the ground, wounded, and I called and she wouldn't say anything, and so I mean I can't remember too well now.

200 Va. at 8, 104 S.E.2d at 3-4. In the present case, just as the Court ruled in <u>Belton</u>, "[t]he decisive question is not whether the evidence supports the verdict of the jury, but whether under all the facts and circumstances the jury was properly instructed on the pertinent principles of law and, therefore, whether the accused has had a fair and impartial trial." 200 Va. at 8, 104 S.E.2d at 4.

-

Therefore, the trial judge properly left to the jury the issue the majority now sua sponte decides the jury should not have considered.  The trial judge, however, was required to submit to the jury, on proper instructions, not only the determination of combat and provocation but also the essential element of heat of passion.  See id. at 9, 104 S.E.2d at 4 (noting that the record supports "the accused's only defense . . . that he [shot and] killed his wife in the heat of passion, aroused by her striking him and saying she would give his money and her body to whom she pleased").

## IV.

"[W]here it is impossible to determine from the verdict whether the jury would have necessarily rejected a lesser-included offense on which it was not instructed, error in refusing to instruct on that offense is not harmless."  Turner v. Commonwealth, 23 Va. App. 270, 276, 476 S.E.2d 504, 507 (1996).  In this case, the jury's finding of premeditation does not render the error harmless.  The jury was instructed that premeditation "means a specific intent to kill adopted at some time before the killing, but which need not exist for any particular length of time."  In the absence of a definition of heat of passion, the jury could have found that evidence proving the elements traditionally associated with manslaughter -- i.e., "intentional act" and "mutual combat" -- satisfied the premeditation requirements because intent was proved and the

-

combat afforded time of contemplation.  In other words, the absence of a heat of passion instruction invited the jury to conclude that because the quarrel or combat lasted for several minutes the killing was deliberate and thoughtful, and not merely an "act done . . . intentional of death."  Belton, 200 Va. at 9, 104 S.E.2d at 5.  The jury would not have known that under existing law they could have found that this period still constituted "the time during which the furor brevis controls," and, thus, evidenced manslaughter.  Potter v. Commonwealth, 222 Va. 606, 610, 283 S.E.2d 448, 450 (1981).

In addition, the jury's rejection of Rhodes's claim of voluntary manslaughter and conviction of premeditated murder does not necessarily indicate they did not believe the killing occurred in the heat of passion.  "To argue that a finding by the jury that [Rhodes] acted with deliberate intention precludes any possibility that they could have found sufficient provocation begs the question."  State v. Benavidez, 616 P.2d 419, 421 (N.M. 1980).  Simply put, the judge did not inform the jury in a way that would have allowed them to sift through the evidence and properly apply the law.  Had the jury been instructed on heat of passion they could have found that the killing occurred as a result of "sudden heat of passion growing solely out of the quarrel or combat," Wilkins, 176 Va. at 583, 11 S.E.2d at 654; that the anger arose during the time of the confrontation as a result of furor brevis and was not

-

necessarily evidence of premeditation; and that, although intentional, the killing was not malicious. "Had the jury been [properly] instructed in the definition of voluntary manslaughter, they could have found that the homicide met that definition." McClung v. Commonwealth, 215 Va. 654, 657, 212 S.E.2d 290, 293 (1975).

The error in refusing the instruction allowed the jury to find the element of premeditation even when evidence merely established the elements of manslaughter. This case is not one in which "the other evidence of guilt was so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict." Hooker v. Commonwealth, 14 Va. App. 454, 457 n.2, 418 S.E.2d 343, 345 n.2 (1992).

V.

For these reasons, I would hold that the trial judge erred in refusing to instruct the jury on heat of passion as an ingredient of the voluntary manslaughter instruction and that the error was not harmless.