*203 BENTON, Judge,
dissenting.
The trial judge determined that the evidence was sufficient to support a jury instruction on voluntary manslaughter. Although the judge instructed the jury that they could find voluntary manslaughter as a lesser-included offense, he refused to instruct the jury concerning heat of passion. The instruction clearly was deficient because it failed to inform the jury of an essential ingredient of voluntary manslaughter. Thus, I would hold that the error was prejudicial and, therefore, reversible.
I.
“Because the issue on appeal deals with the circuit court’s refusal of [an element of] the lesser-included offense instruction ... and even though the Commonwealth prevailed at trial, we must view the evidence on this issue in the light most favorable to the defendant, the proponent of the instruction.” Commonwealth v. Leal, 265 Va. 142, 145, 574 S.E.2d 285, 287 (2003); Blondel v. Hays, 241 Va. 467, 469, 403 S.E.2d 340, 341 (1991). Viewed in this light, the evidence proved Shirley R. Rhodes and Mary Lou Orloff resided together. According to Rhodes’s confession, he and Orloff argued on July 23 about their household finances. During the argument Orloff began “stabbing [Rhodes] in [his] face with her fingers.” In response, Rhodes hit her and, during the fight, punched her face. After Orloff fell to the floor and threatened “to put a bullet in [him],” Rhodes used a stun gun on her. He then put a “trash bag over her head to clean up,” enclosed her body in a bag, and put lime into the bag. He buried Orloffs body in a wooded area.
Four days later, the police uncovered Orloffs badly decomposed body in a bag with limestone and rock salt. The officer who heard and transcribed Rhodes’s confession testified that he “was under the impression that [Rhodes’s conduct] was a continuance movement ... was just one continued fluid movement from the beginning of the confrontation until he drug *204 her out to the front steps.” When he asked Rhodes, “When did you decide to kill her,” Rhodes said:
I didn’t mean to kill her. I think when I hit her in the face — I think I killed her by pushing her nose bone up into her brain.
The assistant chief medical examiner testified that she determined the cause of death to be asphyxia because none of the bruising on the body appeared to result from a lethal blow. She further explained her conclusion as follows:
Well, in this case the diagnosis of asphyxia would have been made because she is wrapped in a heavy plastic which would exclude her — which would prevent her from breathing air and especially if something was held over her face. But the plastic sheeting alone would have prevented her from breathing air. She wouldn’t get oxygen. She could become unconscious and pass out and eventually she would die.
Because this evidence raised a factual issue whether Rhodes believed Orloff was dead when he put the plastic bags over her, the trial judge properly instructed the jury that if the Commonwealth failed to prove the killing was malicious, the jury could find voluntary manslaughter. In pertinent part, he instructed the jury as follows:
If you find that the Commonwealth has failed to prove beyond a reasonable doubt that the killing was malicious but that the Commonwealth has proved beyond a reasonable doubt that the defendant killed Mary Lou Orloff and further:
1. That the killing was the result of an intentional act; and
2. That the killing was committed while in mutual combat then you shall find the defendant guilty of voluntary manslaughter....
II.
“Manslaughter ... is the unlawful killing of another without malice.” Barrett v. Commonwealth, 281 Va. 102, 105, 341 S.E.2d 190,192 (1986).
*205 “To speak of a homicide as having been committed with malice aforethought and in sudden passion, upon reasonable provocation is a legal solecism. ‘Malice aforethought’ implies a mind under the sway of reason, whereas ‘passion,’ while it does not imply dethronement of reason, yet is the furor brevis which renders a man deaf to the value of reason, so that, although the act done was intentional of death, it was not the result of malignity of heart, but imputable to human infirmity. Passion and malice are therefore inconsistent motive powers, and hence an act which proceeds from the one cannot also proceed from the other____ Malice excludes passion. Passion presupposes the absence of malice. In law they cannot coexist. Therefore, if an act of killing, prompted by malice, would be murder, it is only manslaughter when it springs from passion.”
Belton v. Commonwealth, 200 Va. 5, 9-10, 104 S.E.2d 1, 4 5 (1958) (citation omitted)
The instruction the judge gave to the jury concerning manslaughter was premised upon evidence of a killing arising from a quarrel and mutual combat.
“It has been long settled that where a homicide is committed in the course of a sudden quarrel, or mutual combat, or upon a sudden provocation and without any previous grudge, and the killing is from the sudden heat of passion growing solely out of the quarrel, or combat, or provocation, it is not murder, but is manslaughter only— voluntary manslaughter, if there be no further justification, and involuntary manslaughter if the killing be done in the commission of some lawful act, such as in justifiable self-defense.”
Wilkins v. Commonwealth, 176 Va. 580, 583, 11 S.E.2d 653, 654 (1940) (citations omitted; emphasis added). Applying these same principles in various circumstances, the Supreme Court has held that “[w]hen a homicide is committed in the course of a sudden quarrel or broil, or mutual combat, ... and without any previous grudge, the offence may be murder or *206 manslaughter, according to the circumstances of the case.” Read v. Commonwealth, 63 Va. (22 Gratt.) 924, 937-38 (1872). Thus, “[i]t is perfectly true that where homicide occurs in the course of a sudden quarrel, mutual combat, ... and the killing is from passion growing solely out of the provocation, the offense is manslaughter and not murder.” Ballard v. Commonwealth, 156 Va. 980, 993, 159 S.E. 222, 226 (1931). Likewise, evidence of “passion brought on by an unlawful assault may reduce the homicide to manslaughter.” Moxley v. Commonwealth, 195 Va. 151, 158, 77 S.E.2d 389, 393 (1953).
Without an instruction concerning heat of passion, the voluntary manslaughter instruction was prejudicially deficient. By failing to inform the jury concerning heat of passion, the trial judge permitted the jury to conclude that the furor brevis, which arose during the quarrel and mutual combat, was an indicia of malice only. For he instructed the jury as follows:
Once the Commonwealth has proved there was an unlawful killing, then you are entitled to infer there was malice.... Malice may result from any unlawful or unjustifiable motive including anger, hatred, or revenge. Malice may be inferred from any deliberate willful and cruel act against another, however sudden.
The jury had no basis to know that a killing growing out of a quarrel and combat was not necessarily malicious and that this was a circumstance sufficient to prove manslaughter if done in the heat of passion. Thus, even if the jury believed Rhodes’s actions were being directed by passion rather than reason, the instructions did not inform them that this was the predicate for a finding of manslaughter. Put another way, without an instruction on heat of passion, even if the jury believed Rhodes acted in passion, they could still find, based on the instructions, that he acted with malice.
III.
The majority disposes of this case on an issue that was neither raised at trial nor briefed by the Commonwealth. In *207 particular, the majority asserts that the record contains insufficient evidence to support a voluntary manslaughter instruction based on mutual combat. Thus, the majority concludes that a heat of passion instruction that explained one of the manslaughter elements was not warranted because it “derives validity” from “another instruction, which itself has been erroneously given.” To support that conclusion, the majority posits that after Orloff cursed, stabbed her fingers in Rhodes’s face, and threatened to shoot him, she did nothing more to voluntarily engage in combat with Rhodes. This view of the evidence arbitrarily and impermissibly divides the events into two time frames and fails to view the evidence in the light most favorable to the proponent of the instruction. See Blondel, 241 Va. at 469, 403 S.E.2d at 341.
On the evidence in the record, the jury could have found that although Orloff did nothing after she threatened to shoot Rhodes, she did plenty in the nature of “combat” or provocation immediately before that. Moreover, the majority’s view of the record is contrary to the testimony of the officer who heard Rhodes’s confession and testified that Rhodes’s conduct “was just one continued fluid movement from the beginning of the confrontation until he drug her out to the front steps.” This evidence clearly was enough to pass the “scintilla of evidence” threshold and to raise a factual issue for the jury.
Furthermore, the record reflects that the Commonwealth did not object to the trial judge’s instruction to the jury that it was to assess mutual combat or provocation. Indeed, it appears that this was a lesser-included offense instruction that may have been proposed by the Commonwealth because of the lack of contrary evidence concerning the events surrounding Orloffs death. In any event, the manslaughter instruction was supported by the following principles:
A jury, not the trial court, weighs the evidence and assesses the credibility of the witnesses. It is immaterial that the jury might have rejected the lesser-included offense; if there is evidence tending to support the lesser offense, a trial court errs in refusing an instruction thereon.
*208 Barrett, 231 Va. at 107, 341 S.E.2d at 193. Indeed, the trial judge’s decision to instruct the jury on manslaughter was consistent with the principles in Belton and similar decisions of the Supreme Court. See e.g. Briggs v. Commonwealth, 82 Va. 554, 565 (1886) (holding that “[i]f upon being assaulted, the passion of the assaulted person become[s] greatly excited, and under that impulse he kill[s] his assailant, though it be with a deadly weapon, the offence is manslaughter only”).
The Supreme Court reversed the murder conviction in Belton because the trial judge failed to instruct the jury on heat of passion. Belton “shot and killed his wife” but contended he acted in the heat of passion upon reasonable provocation. 200 Va. at 6, 104 S.E.2d at 2. Similar to the present case, the evidence in Belton proved a simple argument escalated to the following events:
“I asked her about Lonza. So she said, ‘If you think I’m going with Lonza, you ask him. If you beat him — I hope he beat hell out of you.’ ... So she told me, said, ‘That’s right — this my body and I give it to my — who I want to, and this is your money, and I spend it on who I want to.’ She hit me — I can’t remember exactly how it was. So I think she got out of the car — I think she got out of the car, and I think she was going to get some flowers ... then I called her and next thing I saw her on the ground, and then when I saw her on the ground after I come to myself in some kind of way, I called her, and when I called her she wouldn’t say anything____ I remember one shot and I saw her on the ground — and I saw her on the ground, wounded, and I called and she wouldn’t say anything, and so I mean I can’t remember too well now.
200 Va. at 8, 104 S.E.2d at 3-4. In the present case, just as the Court ruled in Belton, “[t]he decisive question is not whether the evidence supports the verdict of the jury, but whether under all the facts and circumstances the jury was properly instructed on the pertinent principles of law and, therefore, whether the accused has had a fair and impartial trial.” 200 Va. at 8, 104 S.E.2d at 4.
*209 Therefore, the trial judge properly left to the jury the issue the majority now sua sponte decides the jury should not have considered. The trial judge, however, was required to submit to the jury, on proper instructions, not only the determination of combat and provocation but also the essential element of heat of passion. See id. at 9, 104 S.E.2d at 4 (noting that the record supports “the accused’s only defense ... that he [shot and] killed his wife in the heat of passion, aroused by her striking him and saying she would give his money and her body to whom she pleased”).
IV.
“[Wjhere it is impossible to determine from the verdict whether the jury would have necessarily rejected a lesser-included offense on which it was not instructed, error in refusing to instruct on that offense is not harmless.” Turner v. Commonwealth, 23 Va.App. 270, 276, 476 S.E.2d 504, 507 (1996). In this case, the jury’s finding of premeditation does not render the error harmless. The jury was instructed that premeditation “means a specific intent to kill adopted at some time before the killing, but which need not exist for any particular length of time.” In the absence of a definition of heat of passion, the jury could have found that evidence proving the elements traditionally associated with manslaughter — i.e., “intentional act” and “mutual combat” — satisfied the premeditation requirements because intent was proved and the combat afforded time of contemplation. In other words, the absence of a heat of passion instruction invited the jury to conclude that because the quarrel or combat lasted for several minutes the killing was deliberate and thoughtful, and not merely an “act done ... intentional of death.” Belton, 200 Va. at 9, 104 S.E.2d at 5. The jury would not have known that under existing law they could have found that this period still constituted “the time during which the furor brevis controls,” and, thus, evidenced manslaughter. Potter v. Commonwealth, 222 Va. 606, 610, 283 S.E.2d 448, 450 (1981).
In addition, the jury’s rejection of Rhodes’s claim of voluntary manslaughter and conviction of premeditated murder *210 does not necessarily indicate they did not believe the killing occurred in the heat of passion. “To argue that a finding by the jury that [Rhodes] acted with deliberate intention precludes any possibility that they could have found sufficient provocation begs the question.” State v. Benavidez, 94 N.M. 706, 616 P.2d 419, 421 (1980). Simply put, the judge did not inform the jury in a way that would have allowed them to sift through the evidence and properly apply the law. Had the jury been instructed on heat of passion they could have found that the killing occurred as a result of “sudden heat of passion growing solely out of the quarrel or combat,” Wilkins, 176 Va. at 588, 11 S.E.2d at 654; that the anger arose during the time of the confrontation as a result of furor brevis and was not necessarily evidence of premeditation; and that, although intentional, the killing was not malicious. “Had the jury been [properly] instructed in the definition of voluntary manslaughter, they could have found that the homicide met that definition.” McClung v. Commonwealth, 215 Va. 654, 657, 212 S.E.2d 290, 293 (1975).
The error in refusing the instruction allowed the jury to find the element of premeditation even when evidence merely established the elements of manslaughter. This case is not one in which “the other evidence of guilt was so overwhelming and the error so insignificant by comparison that the error could not have affected the verdict.” Hooker v. Commonwealth, 14 Va.App. 454, 457 n. 2, 418 S.E.2d 343, 345 n. 2 (1992).
V.
For these reasons, I would hold that the trial judge erred in refusing to instruct the jury on heat of passion as an ingredient of the voluntary manslaughter instruction and that the error was not harmless.