COURT OF APPEALS OF VIRGINIA

Present:    Judges Beales, Fulton and Friedman
Argued by videoconference

TRAYVON ANTHONY MCCOY

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0371-24-1                      JUDGE FRANK K. FRIEDMAN
                                                    JUNE 17, 2025

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Afshin Farashahi, Judge

Trevor Jared Robinson for appellant.

Justin M. Brewster, Assistant Attorney General (Jason S. Miyares,
Attorney General, on brief), for appellee.


Following a jury trial, the trial court convicted Trayvon Anthony McCoy of first-degree

murder, aggravated first-degree murder, and two counts of use of a firearm in the commission of a

felony.  On appeal, McCoy argues that the evidence is insufficient to support his convictions.  We

disagree and affirm the trial court's judgment.

BACKGROUND[1]

On October 28, 2021, Rolando Moore (Rolando) met his brother Joseph Moore (Joseph),

and his cousins William Moore (William) and Donta Moore (Donta) at Club Allure in Virginia

Beach for a celebration.  Rolando, William, and Joseph drove separately but arrived at the same

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] "In accordance with familiar principles of appellate review, the facts will be stated in the light most favorable to the Commonwealth, the prevailing party at trial."  *Poole v. Commonwealth*, 73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)).  In doing so, we discard any of McCoy's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably stem from that evidence. *Gerald*, 295 Va. at 473.

time and parked in the front parking lot. Donta arrived 30 minutes later and parked in an overflow lot. Before the group entered the club, the club's security team checked them for weapons. None were found, and security admitted the group. The group sat on a patio at the front of the club that protruded into the parking lot. While there, they had "a regular old night" and talked among themselves.

McCoy arrived at the club later that night. McCoy walked directly to the patio and joined a group there. Minutes after arriving, McCoy approached William and began talking. They shook hands and returned to their separate groups. Rolando described the interaction as casual and without conflict. The defense suggested it was not cordial. When it began to rain, security instructed the patio patrons to go inside. McCoy and his group entered first, and Rolando and the others followed soon after. The groups stood in separate parts of the club, and none of the Moores spoke with McCoy.

Rolando and the rest of the Moores left the club shortly before 11:00 p.m. They stood in the parking lot discussing upcoming plans. McCoy watched the group leave and then his group followed the Moores outside. McCoy briefly spoke to one of the security officers and then went and stood by his vehicle. Rolando and the others dispersed after McCoy came outside. Donta walked and then jogged to the overflow lot while the other three walked to their cars out front. McCoy aggressively called out to William, so William turned and walked back toward the center of the lot. McCoy opened the driver's side door of his car and retrieved an assault-style rifle. Joseph was standing near William.

McCoy pointed the rifle at William and walked in William's direction. The two spoke briefly and then stepped away from each other. William leaned forward toward McCoy, at which point McCoy pointed the gun at William's chest and shot him. William immediately fell to the

ground. Joseph started to approach William and McCoy pointed the gun at him. Joseph turned to run, and McCoy shot him in the back and Joseph fell to the ground.

McCoy walked back to his car, threw the rifle in the passenger seat, got in, and drove out of the parking lot. After McCoy fled, Rolando heard three to five gunshots coming from the overflow parking area. Rolando called 911 and then tried to render aid to his fallen brother and cousin. William was dead when Rolando reached him, and Joseph died before paramedics could attend to him. The police responded to the scene and did not find any weapons near William or Joseph.

The police arrested McCoy the morning after the shooting. During an interview with Virginia Beach Detective Jachimiak, McCoy admitted to shooting William and Joseph and stated that he shot them because "they were acting suspicious, and he was under the impression that they were out to get him . . . ." He agreed that neither William nor Joseph displayed any weapons. McCoy stated that he had been told someone with William and Joseph was "possibly armed." McCoy further told the detective that the security guard told him that someone in the parking lot was "out to get somebody," but he was not specifically told that he was the target. McCoy told the police that William was the only member of the Moore group that he knew—and he believed William had been involved in murders of two of his family members. McCoy expressed concern to the police that the Moores went to the parking lot to lay in wait for him; his concern was based on tensions arising from the previous violence against McCoy's family.

During the trial, at the end of the Commonwealth's evidence, McCoy made a motion to strike, arguing the evidence was insufficient. The court denied the motion. At the close of the evidence, the court instructed the jury on first-degree murder, second-degree murder, and voluntary manslaughter for William's homicide. For the death of Joseph, the trial court instructed the jury on aggravated murder, first-degree murder, second-degree murder, and voluntary manslaughter. The defense and prosecution agreed to an at-fault self-defense instruction which was used by the trial

court. The jury found McCoy guilty of first-degree murder, aggravated murder, and the two firearm charges. McCoy now appeals.

## ANALYSIS

McCoy makes the same essential argument on both murder convictions, so we address them together. McCoy asserts that "the sequence of events prior to the shooting is consistent with self-defense," as supported by his statement to the police and William's lunging toward him before the shooting. He further argues that the evidence failed to prove he acted with malice. In sum, he challenges the sufficiency of the evidence to support his convictions.

"In reviewing a challenge to the sufficiency of the evidence to support a conviction, 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Melick v. Commonwealth*, 69 Va. App. 122, 144 (2018) (quoting *Kelly v. Commonwealth*, 41 Va. App. 250, 257 (2003) (en banc)). "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Raspberry v. Commonwealth*, 71 Va. App. 19, 29 (2019) (quoting *Burrous v. Commonwealth*, 68 Va. App. 275, 279 (2017)). "In conducting our analysis, we are mindful that 'determining the credibility of the witnesses and the weight afforded the testimony of those witnesses are matters left to the trier of fact, who has the ability to hear and see them as they testify.'" *Id.* (quoting *Miller v. Commonwealth*, 64 Va. App. 527, 536 (2015)). "Thus, we will affirm the judgment of the trial court unless that judgment is 'plainly wrong or without evidence to support it.'" *Id.* (quoting *Kelly*, 41 Va. App. at 257).

"In Virginia, every unlawful homicide is presumed to be murder of the second degree." *Tizon v. Commonwealth*, 60 Va. App. 1, 10-11 (2012). To elevate the charge to first-degree

murder, the Commonwealth must prove that the defendant committed a "willful, deliberate, and premeditated killing." *Castillo v. Commonwealth*, 70 Va. App. 394, 416 (2019) (quoting Code § 18.2-32). "Premeditated murder . . . contemplates: (1) a killing; (2) a reasoning process antecedent to the act of killing, resulting in the formation of a specific intent to kill; and (3) the performance of that act with malicious intent." *Fields v. Commonwealth*, 73 Va. App. 652, 674 (2021) (alteration in original) (quoting *Rhodes v. Commonwealth*, 238 Va. 480, 486 (1989)). "Because 'premeditation and formation of an intent to kill seldom can be proved by direct evidence[,] [a] combination of circumstantial factors may be sufficient.'" *Id.* (alterations in original) (quoting *Aldridge v. Commonwealth*, 44 Va. App. 618, 655 (2004)). The intention to kill "need not exist for any specified length of time prior to the actual killing." *Kirby v. Commonwealth*, 50 Va. App. 691, 700 (2007) (quoting *Remington v. Commonwealth*, 262 Va. 333, 352 (2001)). Rather, "the design to kill may be formed only a moment before the fatal act is committed provided the accused had time to think and did intend to kill." *Id.* (quoting *Remington*, 262 Va. at 352). Further, Code § 18.2-31, defining aggravated murder, states that the "willful, deliberate, and premeditated killing of more than one person within a three-year period" constitutes aggravated murder and is punishable as a Class 1 felony.

"Second-degree murder . . . is defined as a malicious killing." *Woods v. Commonwealth*, 66 Va. App. 123, 131 (2016). "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation." *Id.* (quoting *Branch v. Commonwealth*, 14 Va. App. 836, 841 (1992)). "Voluntary manslaughter is the unlawful killing of another, 'committed in the course of a sudden quarrel, or mutual combat, or upon a sudden provocation, and without any previous grudge, and the killing is from the sudden heat of passion growing solely out of the quarrel, or combat, or provocation.'" *Id.* (quoting *Wilkins v. Commonwealth*, 176 Va. 580, 583 (1940)).

"'Heat of passion refers to the furor brevis which renders a man deaf to the voice of reason.' 'It excludes malice when provocation reasonably produces fear or anger that causes one to act on impulse without conscious reflection.'" *Id.* (quoting *Rhodes v. Commonwealth*, 41 Va. App. 195, 200 (2003)). "Malice and heat of passion cannot coexist." *Id.* (quoting *Turner v. Commonwealth*, 23 Va. App. 270, 275 (1996), *aff'd*, 255 Va. 1 (1997)). "As a general rule, whether provocation, shown by credible evidence, is sufficient to engender the furor brevis necessary to rebut the presumption of malice arising from a homicide is a question of fact." *Id.* at 131-32 (quoting *McClung v. Commonwealth*, 215 Va. 654, 656 (1975)).

Here, the evidence demonstrated that McCoy had exchanged words with William earlier in the night. Although the encounter did not appear hostile, later video footage from the club shows McCoy observing William and then following William outside when he and his group left. As William was walking away in the parking lot, McCoy called out to him; William then started to return toward the club entrance. McCoy immediately walked to his car and retrieved his assault-style rifle. McCoy confronted William while armed. The two stepped apart and when William leaned forward, McCoy shot him in the chest at close range, killing him. Then, after Joseph attempted to render aid to William, McCoy threatened him with the rifle and shot Joseph in the back as he was retreating.

"Self-defense is an affirmative defense which the accused must prove by introducing sufficient evidence to raise a reasonable doubt about his guilt." *Hughes v. Commonwealth*, 39 Va. App. 448, 464 (2002) (quoting *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993)). "Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted in self-defense is a question of fact." *Bell v. Commonwealth*, 66 Va. App. 479, 486 (2016) (quoting *Smith*, 17 Va. App. at 71). The fact finder must determine whether the appellant acted in reasonable apprehension of bodily harm. *See, e.g.*, *Diffendal v. Commonwealth*, 8 Va. App.

417, 421 (1989) (explaining that a person "is privileged to use reasonable force" when he or she "reasonably apprehends bodily harm by another" and "exercise[s] reasonable force to repel the assault"). This defense also requires a finding that the force that the appellant used was reasonable in relation to the threatened harm. *See Caison v. Commonwealth*, 52 Va. App. 423, 440 (2008).

"Virginia law recognizes two forms of self-defense to criminal acts of violence: self-defense without fault ('justifiable self-defense') and self-defense with fault ('excusable self-defense')." *Jones v. Commonwealth*, 71 Va. App. 70, 94 (2019) (quoting *Bell*, 66 Va. App. at 487). "Any form of conduct by the accused from which the fact finder may reasonably infer that the accused contributed to the affray constitutes 'fault.'" *Id.* at 94-95 (quoting *Smith*, 17 Va. App at 71). Excusable self-defense occurs where an accused, "although in some fault in the first instance in provoking or bringing on the difficulty, when attacked retreats as far as possible, announces his desire for peace, and [injures] his adversary from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm." *Avent v. Commonwealth*, 279 Va. 175, 200 (2010).

Here, the evidence proved that McCoy initiated the confrontation which led to the deaths of both William and Joseph. McCoy followed William outside, immediately armed himself, and then confronted William while holding an assault-style rifle. William and Joseph were both unarmed, as McCoy later acknowledged in his interview with the police. Although McCoy alluded to a vague notion that William and Joseph were "out to get him," the record does not support McCoy's theory that he should have been exonerated at trial on self-defense grounds. The question of self-defense presented a jury question, and McCoy did receive an at-fault self-defense instruction—a theory the jury plainly rejected. Further, just after shooting William and Joseph, McCoy fled the area. "Under settled principles, a fact finder may infer a criminal

- 7 -

defendant's 'consciousness of guilt from his efforts to avoid detection.'" *Clark v. Commonwealth*, 78 Va. App. 726, 754 (2023) (quoting *Aley v. Commonwealth*, 75 Va. App. 54, 68 (2022)). Moreover, the parking lot video footage is consistent with the jury's findings. *See Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022) ("[W]e, on appellate review, view video evidence not to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the trial court did.").

Thus, the record amply supports the jury's rejection of McCoy's self-defense claim and its conclusion that McCoy maliciously and premeditatedly shot and killed William and Joseph. The Commonwealth's evidence was competent, was not inherently incredible, and was sufficient to prove beyond a reasonable doubt that McCoy was guilty of first-degree murder, aggravated murder, and two counts of use of a firearm in the commission of a felony.

CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

*Affirmed.*