COURT OF APPEALS OF VIRGINIA

Present: Chief Judge Decker, Judge O'Brien and Senior Judge Haley
Argued at Richmond, Virginia

ANTHONY PATRICK WASHINGTON

                                             OPINION BY
v.      Record No. 1256-21-2      CHIEF JUDGE MARLA GRAFF DECKER
                                         OCTOBER 18, 2022
COMMONWEALTH OF VIRGINIA

FROM THE CIRCUIT COURT OF THE CITY OF FREDERICKSBURG
Gordon F. Willis, Judge

James Joseph Ilijevich for appellant.

Virginia B. Theisen, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.


Anthony Patrick Washington appeals his convictions for aggravated malicious wounding

and the use of a firearm in the commission of a felony, in violation of Code §§ 18.2-51.2 and -53.1.

The appellant argues that the evidence was insufficient to sustain his convictions because he acted

in self-defense. Alternatively, he contends that he shot the victim in the heat of passion and

therefore without malice. For the following reasons, we affirm the convictions.

I. BACKGROUND[1]

In the summer of 2020, Deedra Cook stayed at a hotel in Fredericksburg for several weeks

while working in the area. On the evening of June 30, 2020, Cook spent time in the hotel parking

lot removing some stickers from her son Cody's car. The parking lot is directly accessible from

each hotel room.

---

[1] In accordance with familiar principles of appellate review, we view the facts in the light
most favorable to the Commonwealth, the prevailing party at trial. *See, e.g.*, *Caison v.
Commonwealth*, 52 Va. App. 423, 440 (2008).

As Cook worked in the parking lot with Cody, the appellant and Robert Lynn returned from a trip to the store. After parking, the appellant approached Cody's car, insulted Cook, and told her she did not have to conceal her gun. Cook "guess[ed]" the appellant had previously seen her with a gun concealed under her clothes, but she did not have a gun with her that day. During the heated discussion about gun laws that followed, both the appellant and Cook claimed to own multiple firearms and were "yelling and screaming" at each other. Cook walked from the driver's side around the car to where the appellant was standing, pointed at him, and repeatedly told him to leave. Cody was standing by his car during the incident. The appellant was taller than Cook and stood close to her, almost "towering over" her. As both parties yelled, Cook's other son, Tyler, came outside and "tr[ied] to figure out what was going on."

Cook then called the appellant a racial epithet. The appellant dropped a folder he had been holding, backed up, and removed a gun from a holster on his hip. He pointed the gun toward Cook's head, and she turned slightly away. The appellant then lowered the gun as he moved toward her from behind. Cook heard her sons tell the appellant that he did not "have to do this." Nevertheless, while standing close behind Cook, the appellant fired the gun and shot Cook in the ankle. As Cook staggered forward and collapsed onto the sidewalk, the appellant walked away. The hotel surveillance camera recorded a video of the altercation without sound.

The Commonwealth charged the appellant with aggravated malicious wounding and use of a firearm in the commission of a felony. He was tried by a judge sitting without a jury.

The appellant testified in his defense. He said that when he saw Cook earlier that day, they discussed gun laws and she told him he needed a permit to carry a gun. He contended that at that time she "patt[ed]" her pocket like she had a concealed weapon. The appellant testified that he later decided to "inform" her about the laws in Virginia. In the parking lot, he told her, "Sweetheart, you know, in Virginia, you don't need a permit to open-carry." At that point, Cook "went off," cursing

at him. According to the appellant, during the confrontation, Cook patted her pocket again and "said take your [B]lack ass inside and shoot some dope." The appellant testified that, in response, he called her a "bitch" and "walk[ed] away from her," but he stopped when Cook came around the car and demanded "what the fuck did you just say to me." The appellant said that Cook called him a racial epithet and stated that she had "something for [his] [B]lack ass."

While on the witness stand, the appellant explained that he felt "[t]hreatened" by Cook and her sons, who, according to him, were "converging" on him, so he drew his gun with the intent "to fire a warning shot." The incident seemed "very quick," and he represented that he "didn't think" because he "was just reacting." He contended that he did not "know what was going to happen" when he unholstered his gun.

In addition to Cook and the appellant, several witnesses testified at trial. Witnesses to the altercation included Cook's two sons, as well as Robert Lynn and Carolyn Woolfolk.[2] The eyewitnesses largely agreed on the course of events, but they contradicted each other on some of the details.

At the close of the Commonwealth's case-in-chief and again after the close of the case, the appellant made motions to strike the evidence. The trial court denied both motions. In closing argument, the appellant contended that he acted in self-defense, did not intend to shoot Cook, and was not pointing the gun at her. Alternatively, he asserted there was reasonable provocation because Cook called him "the most vile thing that she could have called him" and "spit in his face." The appellant argued that he shot Cook out of "a heat of passion, . . . hot blood, rage, and fear."

After argument by counsel, the court, as trier of fact assessing the evidence, found that the appellant and Cook "both . . . used . . . terrible and ugly words that included slurs that were meant to

---

[2] Fredericksburg Police Officer Aric Rusk and Detective Alexandra Tittle also testified. They both relayed the statements the appellant gave after shooting Cook. The appellant's earlier account was consistent with his testimony at trial.

be offensive, demeaning, [and] to marginalize the other." The court observed that the appellant "chose not to back down" even though he could have walked away without "turn[ing] [his] back" to Cook. After considering the "credible evidence," including the hotel surveillance that captured the entire confrontation through a silent video, the court convicted the appellant of aggravated malicious wounding and the use of a firearm in the commission of a felony.

The appellant made a motion to set aside the verdict, arguing the Commonwealth failed to prove malice because Cook's insulting language constituted reasonable provocation and he acted in the heat of passion. The court denied the motion and sentenced the appellant to twenty-three years in prison, with thirteen years suspended.

## II. ANALYSIS

The appellant argues that the evidence was insufficient to support his convictions. He suggests that he established that he acted in self-defense or, alternatively, in the heat of passion, either of which would negate the crimes.

"When reviewing the sufficiency of the evidence, '[t]he judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (alteration in original) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). "In such cases, '[t]he Court does not ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Id.* (alteration in original) (quoting *Secret v. Commonwealth*, 296 Va. 204, 228 (2018)). Instead, "the relevant question is whether '*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Vasquez v. Commonwealth*, 291 Va. 232, 248 (2016) (quoting *Williams v. Commonwealth*, 278 Va. 190, 193 (2009)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion

- 4 -

might differ from the conclusions reached by the finder of fact at the trial.'"[3] *McGowan*, 72 Va. App. at 521 (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). "These principles apply 'with equal force' to bench trials no differently than to jury trials." *Commonwealth v. Moseley*, 293 Va. 455, 463 (2017) (quoting *Vasquez*, 291 Va. at 249).

In conducting our review, this Court likewise gives deference to the fact finder's assessment of witness credibility. Determining "the 'credibility of the witnesses and the weight of the evidence' are tasks left 'solely [to] the trier of fact' unless those determinations are 'plainly wrong or without evidence to support [them].'" *Nelson v. Commonwealth*, 73 Va. App. 617, 622 (2021) (alterations in original) (quoting *Wactor v. Commonwealth*, 38 Va. App. 375, 380 (2002)). This is so because the fact finder "has the unique opportunity to observe the demeanor of the witnesses as they testify." *Dalton v. Commonwealth*, 64 Va. App. 512, 525 (2015) (quoting *Lea v. Commonwealth*, 16 Va. App. 300, 304 (1993)). The trier of fact is "free to believe or disbelieve, in part or in whole, the testimony of any witness." *Bazemore v. Commonwealth*, 42 Va. App. 203, 213 (2004) (*en banc*); *see Rollston v. Commonwealth*, 11 Va. App. 535, 547 (1991). Similarly, "[i]n its role of judging witness credibility, the fact finder is entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Flanagan v. Commonwealth*, 58 Va. App. 681, 702 (2011) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

It is under this well-established standard of review that we consider the appellant's challenges to his convictions. He raises two distinct contentions. First, the appellant argues that the trial court erred by not finding that he acted in self-defense. Second, he sets forth the alternative

---

[3] We give the same deference to the trial court's interpretation of the video evidence. *See Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022). "Such deference stems not from the trial court being in a superior position to view the video evidence but from the difference in our respective roles." *Id.*

theory that the court erroneously rejected his claim that he acted in the heat of passion rather than with malice.

## A. Self-Defense

The appellant argues that the trial court should have concluded that he acted in self-defense. He suggests that his "actions were not excessive in terms of the perceived threat of three adults, spewing racial epithets, coming toward him to do him harm, possibly with a firearm."[4]

The law in this area is clear. A defendant bears the burden of introducing evidence supporting the affirmative defense of self-defense. *Jones v. Commonwealth*, 71 Va. App. 70, 86 (2019). To meet this burden, the defendant at trial must "prove[] circumstances" of self-defense sufficient to "create a reasonable doubt" of his guilt. *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993). "Whether an accused" meets this threshold "is a question of fact." *Id.*

"In order to establish self-defense, a defendant must show that he . . . 'reasonably believed that [he] was in danger of serious bodily harm or death.'" *Jones*, 71 Va. App. at 86 (quoting *Commonwealth v. Sands*, 262 Va. 724, 730 (2001)). In addition, he must demonstrate "'that he was in imminent danger of harm' by showing 'an overt act or other circumstance'" that constitutes "'an immediate threat to safety.'" *Id.* (quoting *Carter v. Commonwealth*, 293 Va. 537, 544 (2017)).

"Virginia law recognizes two forms of self-defense to criminal acts of violence: self-defense without fault," referred to as justifiable self-defense, and "self-defense with fault," known as excusable self-defense. *Bell v. Commonwealth*, 66 Va. App. 479, 487 (2016). The first type occurs when the accused is "*without any fault on his part in provoking or bringing on the difficulty*." *Avent*

---

[4] In support of his theory, the appellant emphasizes his testimony and that of his witnesses, contrary to the applicable standard of review. For example, his characterization of the record as showing that Cody and Tyler were converging on him is belied by the video. The recording, which was in evidence, shows that as the appellant and Cook argued at the side of the car, Cody and Tyler stood at the front of the car. Cook's sons did not "move[] close" until the appellant unholstered his firearm.

*v. Commonwealth*, 279 Va. 175, 199 (2010) (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 975 (1977)).  In contrast, the second type of self-defense occurs when the accused is at "some fault in the first instance in provoking or bringing on the difficulty" but, when attacked, he "retreats as far as possible, announces his desire for peace," and acts "from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm." *Bell*, 66 Va. App. at 487 (quoting *Bailey v. Commonwealth*, 200 Va. 92, 96 (1958)).

In this case, when the appellant returned to the parking lot, Cook was attending to her son's car.  The appellant approached Cook and yelled at her, calling her an "ignorant [W]hite cunt bitch." As the two exchanged heated insults, the appellant became "louder and more aggressive." Ultimately, during the verbal dispute, the appellant removed his firearm from its holster and shot the unarmed victim while standing behind her.  This record supports the trial court's conclusion that the appellant "was not '*without any fault on his part in provoking or bringing on the difficulty*'" and cannot rely on justifiable self-defense.  *See Avent*, 279 Va. at 199 (quoting *Yarborough*, 217 Va. at 975).

Further, the record supports the trial court's finding that the appellant did not retreat, despite several opportunities during the confrontation to do so safely.  Instead, the appellant escalated the situation drastically during the heated verbal exchange by unholstering his gun, pointing it at Cook's head, and then ultimately shooting her in the ankle.  Consequently, the trial court was not plainly wrong in rejecting the theory of excusable self-defense.  *See Jones*, 71 Va. App. at 95 (holding that the evidence did not support an excusable self-defense instruction in part because the defendant failed to retreat).

The evidence, when viewed in the light most favorable to the Commonwealth, demonstrates that the appellant participated in instigating the altercation and did not withdraw despite an ability to

do so. Accordingly, the trial court did not err by finding that the appellant did not act in either form of self-defense when he shot Cook.

## B. Heat of Passion

The appellant argues that there was overwhelming evidence that he acted in the heat of passion due to Cook's behavior and use of certain racist language. Specifically, he contends that Cook's use of the N-word[5] directed at him, triggered a "visceral reaction." The appellant suggests that this "racial epithet, as a matter of law, was likely to create fear or anger which could incite violence.'" He argues that Cook's "overt racism" created "a mental state that negates malice."

Whether violence was completed in the heat of passion and due to a reasonable provocation is generally a question for the fact finder. *See Avent*, 279 Va. at 201; *Dandridge v. Commonwealth*, 72 Va. App. 669, 682 (2021). Heat of passion is a defense based on a defendant's lack of malice. *Rhodes v. Commonwealth*, 41 Va. App. 195, 200 (2003). It "refers to the *furor brevis* which renders a [person] deaf to the voice of reason." *Id.* (quoting *Caudill v. Commonwealth*, 27 Va. App. 81, 85 (1998)). "[W]hen provocation reasonably produces fear" or anger, causing "one to act on impulse without conscious reflection," no malice exists. *Id.* (quoting *Graham v. Commonwealth*, 31 Va. App. 662, 671 (2000)). In other words, heat of passion and malice are mutually exclusive.

In contrast to heat of passion, "[m]alice inheres in the 'doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'" *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). However, "[w]ords alone, no matter how insulting, are never sufficient to constitute heat of passion" so as to negate the presence of malice. *See Palmer v. Commonwealth*, 71 Va. App. 225, 237 (2019) (alteration in original) (quoting *Rhodes*, 41 Va. App. at 201); *accord Smith*, 296 Va. at 461. *See generally* 2 Jens

---

[5] There is no dispute that Cook called the appellant the actual racial epithet associated with the N-word, but that word will not be used in this Court's opinion given its nature in context. *See N-word*, *Oxford English Dictionary* (3d ed. 2004).

David Ohlin, *Wharton's Criminal Law* § 22:6 (16th ed. 2021) (noting that despite the common law rule that insulting "words or gestures . . . do not constitute adequate provocation," they may be "considered" "when accompanied by other conduct"). This long-established legal principle has roots in the common law. *See McCoy v. Commonwealth*, 133 Va. 731, 739 (1922) (citing *Read's Case*, 63 Va. (22 Gratt.) 924, 938 (1872)). And, we are bound by this principle and its application.[6] *See Vay v. Commonwealth*, 67 Va. App. 236, 258 n.6 (2017) (recognizing that this Court is bound by its own precedent as well as that of the Supreme Court of Virginia).

The trial court acknowledged that Cook used "terrible and ugly words that included slurs that were meant to be offensive, demeaning, [and] to marginalize" the appellant. Nonetheless, it declined to "grade" the incendiary insults the appellant and the victim exchanged. Clearly, this Court recognizes that "[g]iven American history, . . . the [N-word] . . . can have a highly disturbing impact on the listener." *See Hrobowski v. Worthington Steel Co.*, 358 F.3d 473, 477 (7th Cir. 2004) (citing *Virginia v. Black*, 538 U.S. 343, 355 (2003)). This word is "loaded with a legacy of . . . racial hatred." *United States v. Bartow*, 997 F.3d 203, 209 (4th Cir. 2021). We agree with the trial court's characterizations of the racist language and its utterly devastating impact on individuals and society. Even so, binding precedent is clear that words by themselves do not constitute provocation sufficient to support the heat of passion defense.[7] *See Palmer*, 71 Va. App. at 237.

---

[6] The appellant argues that Code § 18.2-423, the statute prohibiting cross-burning, signals that the legislature has recognized that some speech is inherently likely to trigger violence. Unlike application of such a statute, in this case, we are not dealing with a statutory carve out for certain words. Further, we are not persuaded that the "fighting words" line of cases pertaining to free speech affects our review of the sufficiency of the evidence to prove malice in this case.

[7] To the extent that the appellant suggests that the victim's behavior along with her words incited heat of passion, our analysis addresses that point. The trial court considered all the evidence, including Cook's behavior, and found that the appellant acted with malice. The competing evidence was before the trial court, which had the opportunity to listen to the testimony, observe the witnesses, watch the video, consider the arguments of counsel, and determine what happened. *See Lockhart v. Commonwealth*, 34 Va. App. 329, 343 (2001).

"Malice may be inferred 'from the deliberate use of a deadly weapon unless, from all the evidence,' there is reasonable doubt as to whether malice existed." *Avent*, 279 Va. at 201-02 (quoting *Smith v. Commonwealth*, 239 Va. 243, 263 (1990)). The trial court found beyond a reasonable doubt that the appellant acted with malice. That factual determination is supported by the record and included consideration of the use of the racial epithets. The appellant approached Cook and called her an "ignorant [W]hite cunt bitch." As the two engaged in a heated argument and said patently offensive things to one another, the appellant went over to her, dropped his folder, and drew his firearm. The appellant first pointed it toward Cook's head and then lowered it as he walked up behind her. He did all of this within moments of shooting her. The appellant's clearly intentional acts support the finding that he acted deliberately rather than impulsively in the heat of passion. *See Williams v. Commonwealth*, 64 Va. App. 240, 253 (2015). This conclusion is further supported by the fact that immediately after the shooting, the appellant "calmly walked away." *See generally Simon v. Commonwealth*, 58 Va. App. 194, 206 (2011) ("The statements and conduct of an accused after the events that constitute the charged crime may also be relevant circumstantial evidence of intent."). In these circumstances, the appellant's intentional use of a deadly weapon supports an inference that he acted with malice. The trial court's finding that the appellant acted deliberately and intentionally in response to Cook's use of racial slurs against him and that he was not under the influence of a passion that rendered him "deaf to the voice of reason" is supported by the record.

## III. CONCLUSION

Viewing the evidence in the light most favorable to the Commonwealth, the record does not support the appellant's claim that he acted in self-defense. In addition, the evidence was sufficient to prove that the appellant acted with malice and not in the heat of passion upon a reasonable

- 10 -

provocation.  Accordingly, we affirm the convictions for aggravated malicious wounding and the related firearm offense.

*Affirmed.*