ANNUNZIATA, Judge.
Rhodes was convicted by a jury of the first-degree murder of Mary Lou Orloff and was sentenced to life imprisonment. On appeal, he argues the trial court committed reversible error when it refused to instruct the jury on “heat of passion.” For the reasons that follow, we affirm.

Facts

On appeal, when the issue is a refused jury instruction, “[the evidence is viewed] in the light most favorable to the proponent of the instruction.” Lynn v. Commonwealth, 27 Va.App. 336, 344, 499 S.E.2d 1, 4-5 (1998) (citation omitted). So viewed, the evidence shows that on Sunday, July 23, 2000, Mary Lou Orloff returned to the home she shared with Rhodes at approximately 5:30 p.m. She and Rhodes began arguing after he requested her assistance in paying a bill in the amount of $4,500. In the course of the argument she cursed at him, and “got to pointing and stabbing me in my *198 face with her fingers.” Officer James Huddle testified and read for the jury the written statement Rhodes made to him after Orloffs body was discovered. Huddle stated that, after Rhodes told him that Orloff put her fingers in his face while they argued, Rhodes demonstrated the movement for him and it was “sort of like pointing .” Rhodes hit Orloff in the stomach, and she put her hands in a clawing position. He then hit her in the face, and she fell to the floor and threatened to put a bullet in him. Rhodes stated he might have stunned her with a stun gun at that point. After Orloff fell to the ground, Rhodes went outside to get trash bags, which he used to encase Orloffs body, holding one of the bags closely around her head for a few minutes. Rhodes dragged Orloff out of the house and put her inside the back of her pickup truck. He drove to Suffolk where he buried the body, using lime inside and outside the bag.
Rhodes abandoned the truck near U.S. Highway 301 and got a ride home from a friend. On July 24, 2000, at approximately 11:00 a.m., one of Orloffs co-workers called in a missing person’s report because Orloff had not shown up for work. At approximately 3:00 p.m ., on July 24, 2000, Rhodes called the Brunswick County Sheriffs Department to report Orloff as missing. Earlier that day, Lieutenant Raymond R. Bell of the Sussex County Sheriffs Department observed Orloffs truck on a path off of U.S. Highway 301. The investigation into the abandoned vehicle ultimately led the police to Rhodes, who confessed on July 27, 2000 to killing Orloff. According to autopsy reports, Orloffs cause of death was “[a]sphyxia ... due to lack of oxygen to the body.”
The jury was instructed that they could find Rhodes guilty of voluntary manslaughter if they found the killing was committed while in mutual combat:
If you find that the Commonwealth has failed to prove beyond a reasonable doubt that the killing was malicious but that the Commonwealth has proved beyond a reasonable doubt that the defendant killed Mary Lou Orloff and further that the killing was the result of an intentional act and that *199 the killing was committed while in mutual combat, then you shall find the defendant guilty of voluntary manslaughter.
The trial court also gave the following instructions to the jury on malice:
Malice is that state of mind which results in the intentional doing of a wrongful act to another without legal excuse or justification, at a time when the mind of the actor is under the control of reason. Malice may result from any unlawful or unjustifiable motive including anger, hatred, or revenge. Malice may be inferred from any deliberate willful and cruel act against another, however sudden.
Words alone, no matter how offensive or insulting they may be, are never sufficient provocation to reduce the offense of murder to manslaughter.
Rhodes proffered the following instruction to the trial court:
Heat of passion excludes malice when that heat of passion arises from provocation that reasonably produces an emotional state of mind such as hot blood, rage, anger, resentment, terror or fear so as to demonstrate an absence of deliberate design to kill, or cause one to act on impulse without conscious reflection. Heat of passion must be determined from circumstances as they appeared to defendant but those circumstances must be such as would have aroused heat of passion in a reasonable person.
If a person acts upon reflection or deliberation, or after his passion has cooled or there has been a reasonable time or opportunity for cooling, then the act is not attributable to heat of passion.
The trial court refused Rhodes’s proffered instruction, and the jury convicted him of first-degree murder.

Analysis

On appeal, Rhodes contends the trial court erred in refusing to give his proffered instruction on “heat of passion.” We find this contention is without merit.
*200 Jury instructions are properly refused if not supported by more than a scintilla of evidence. Commonwealth v. Donkor, 256 Va. 443, 445, 507 S.E.2d 75, 76 (1998). However, “[i]f a proffered instruction finds any support in credible evidence, its refusal is reversible error.” McClung v. Commonwealth, 215 Va. 654, 657, 212 S.E.2d 290, 293 (1975). “A reviewing court’s responsibility in reviewing jury instructions is ‘to see that the law has been clearly stated and that the instructions cover all issues which the evidence fairly raises.’ ” Darnell v. Commonwealth, 6 Va.App. 485, 488, 370 S.E.2d 717, 719 (1988) (quoting Swisher v. Swisher, 223 Va. 499, 503, 290 S.E.2d 856, 858 (1982)).
[W]here a homicide is committed in the course of a sudden quarrel, or mutual combat, or upon a sudden provocation and without any previous grudge, and the killing is from the sudden heat of passion growing solely out of the quarrel, or combat, or provocation, it is not murder, but is [voluntary] manslaughter ... if there be no further justification, and involuntary manslaughter if the killing be done in the commission of some lawful act, such as in justifiable self-defense.
Wilkins v. Commonwealth, 176 Va. 580, 583, 11 S.E.2d 653, 654 (1940) (citing Byrd v. Commonwealth, 89 Va. 536, 16 S.E. 727 (1893); Read v. Commonwealth, 63 Va. (22 Gratt.) 924 (1872)).
A killing done in the heat of passion and upon reasonable provocation will reduce a homicide from murder to voluntary manslaughter. Barrett v. Commonwealth, 231 Va. 102, 105-06, 341 S.E.2d 190, 192 (1986) (citing Martin v. Commonwealth, 184 Va. 1009, 1016-17, 37 S.E.2d 43, 46 (1946)). “Heat of passion refers to the furor brevis which renders a man deaf to the voice of reason.” Caudill v. Commonwealth, 27 Va.App. 81, 85, 497 S.E.2d 513, 514-15 (1998) (citation omitted). “[It] excludes malice when provocation reasonably produces fear [or anger] that causes one to act on impulse without conscious reflection.” Graham v. Commonwealth, 31 Va.App. 662, 671, 525 S.E.2d 567, 571 (2000). “Heat of passion is determined by the nature and degree of *201 the provocation and may be founded upon rage, fear or a combination of both.” Barrett, 231 Va. at 106, 341 S.E.2d at 192.
Applying these principles to the case at bar, we find the record does not contain a scintilla of evidence to support a heat of passion instruction. Rhodes stated that, when Orloff returned home on July 23, 2000, they argued about a credit card bill. Orloff cursed and yelled at him and started pointing and stabbing her fingers at Rhodes’s face. Rhodes responded by punching Orloff in the stomach and in the face until she fell to the ground and threatened to “put a bullet in him.” She did nothing more to voluntarily engage in combat with Rhodes. Words alone, no matter how insulting, are never sufficient to constitute heat of passion. Canipe v. Commonwealth, 25 Va.App. 629, 642, 491 S.E.2d 747, 753 (1997); compare Belton v. Commonwealth, 200 Va. 5, 7-8, 104 S.E.2d 1, 3-4, (1958) (finding reversible error where trial court refused an instruction on “heat of passion,” where defendant had arrived home on two occasions and discovered victim, his wife, in a nightgown, drinking whiskey with another man and she told him on the night she was killed, “[T]his is my body and I give to ... who I want to____”).
Furthermore, Orloff was 5 feet 2 inches tall and weighed 160 pounds as compared to Rhodes, who is approximately 6 feet 3 inches tall and weighs over 300 pounds. Orloff did not possess a gun, or any other means to seriously harm Rhodes, and did nothing more than curse at Rhodes, point and stab her fingers in his direction, and verbally threaten to shoot him. Such acts did not establish Orloffs “imminent intention to kill or seriously harm” Rhodes, Smith v. Commonwealth, 17 Va. App. 68, 71-72, 435 S.E.2d 414, 416 (1993), and would not render a reasonable person “deaf to the voice of reason.” Caudill, 27 Va.App. at 85, 497 S.E.2d at 514-15; compare Belton, 200 Va. at 9, 104 S.E.2d at 4 (further noting that where victim hit the defendant while they were arguing, “heat of passion” instruction was warranted). In short, not a scintil *202 la of evidence establishes reasonable provocation on the part of the victim.
Rhodes manifestly proffered the heat of passion instruction to develop and explain one of the elements of “voluntary manslaughter based on mutual combat,” which was made part of the court’s finding instruction. It cannot logically be said, however, that an instruction without evidentiary support is properly given because it clarifies or develops law presented in another instruction that is also without evidentiary support. These are the circumstances in which the proffered instruction must be evaluated in this case. Notwithstanding the insufficient evidentiary predicate underlying a heat of passion instruction, the court included in its finding instruction a voluntary manslaughter theory of conviction. To be sure, the voluntary manslaughter instruction was given without objection from either party and we address it not to show reversible error, but to make clear the underlying factual circumstances which generated the defense’s perceived need for further instruction. It cannot follow that an erroneous instruction derives validity because it serves to explain another instruction, which itself has been erroneously given, albeit without objection. Because not a scintilla of evidence supports a voluntary manslaughter theory upon which a conviction could lie in this case, Rhodes’s proffered instruction would only serve to compound the error and it was properly denied.
Accordingly, we find no error in the trial court’s decision and affirm Rhodes’s conviction.[1]

Affirmed.

. The Commonwealth filed an objection to Rhodes’s designation of the record on appeal, contending he included material not "germane to the question[s] presented.” Rule 5A:25(c)(3). Specifically, the Common-_ wealth argues that neither the pretrial motion transcript, the sentencing transcript, nor the voir dire of the jury, has any relevance to the question of whether the trial court erred in refusing a "heat of passion” instruction. We agree and direct the trial court, in determining counsel’s costs and necessary direct out-of-pocket expenses, that counsel not be reimbursed for the costs and expenses related to these irrelevant items.