COURT OF APPEALS OF VIRGINIA

Present:   Judges O'Brien, Causey and Friedman
Argued by videoconference


MALIK BROWN

MEMORANDUM OPINION[*] BY
v.       Record No. 0834-21-1       JUDGE FRANK K. FRIEDMAN
MARCH 14, 2023

COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Stephen C. Mahan, Judge

Kristin Paulding (7 Cities Law, on brief), for appellant.

David A. Mick, Assistant Attorney General (Jason S. Miyares,
Attorney General; David M. Uberman, Assistant Attorney General,
on brief), for appellee.


Malik Brown ("appellant") was convicted by a Virginia Beach jury of second-degree

murder and use of a firearm in the commission of murder.  When the jury returned the guilty

verdicts, appellant asked to poll the individual jurors.  Two of the jurors inadvertently were not

polled; however, no objection was made at the time.  After the jury announced a

twenty-five-year sentence, appellant again requested a polling of the jury.  This time, all twelve

jurors were polled and agreed that this was their sentence.

Much later, appellant moved to set aside the verdict because the jury was not unanimous.

While the final sentencing hearing was at first continued so the two jurors could be brought to

court to verify their verdicts, the trial court later denied appellant's motions for a mistrial and to

set aside the verdict, as well as his motion to bring the jurors back to court.

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413.

This appeal follows, with appellant claiming that the trial court erred in convicting him of second-degree murder and use of a firearm in the commission of a felony. Appellant also argues that the trial court erred in denying his motion for a mistrial and his request to subpoena two of the jurors after they had been discharged.

For the following reasons, we affirm the trial court's rulings.

I. Factual Background and Trial Testimony

On appeal, "we review the evidence in the 'light most favorable' to the Commonwealth." *Clanton v. Commonwealth*, 53 Va. App. 561, 564 (2009) (*en banc*) (quoting *Commonwealth v. Hudson*, 265 Va. 505, 514 (2003)). That principle requires us to "discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." *Kelly v. Commonwealth*, 41 Va. App. 250, 254 (2003) (*en banc*) (quoting *Watkins v. Commonwealth*, 26 Va. App. 335, 348 (1998)).

On March 3, 2019, appellant went to a club in Virginia Beach called "The Cave" with his girlfriend, Cornelia Taylor. They were joined by Taylor's friend and appellant's cousin. Another group was present at The Cave that night, including Malcolm Jones, Deshawn Douglas, and Kiara Broadnax. As The Cave was getting ready to close for the night, Broadnax and Taylor got into an argument. When The Cave closed, Jones' group left and went to 7-Eleven.

Appellant's group had also stopped at the same 7-Eleven. Inside the 7-Eleven, Broadnax and Taylor argued again. As Jones separated the two women, Taylor accidentally hit Jones. Jones then "shoved [Taylor] a little." Appellant became agitated and told Jones not to touch Taylor.

Eventually, they all exited the 7-Eleven. Taylor and Broadnax began to fight again, and Jones again broke up the altercation. As this was happening, both appellant and Douglas had

guns drawn. When appellant saw that Douglas had a gun, appellant said, "this don't need to go on" and shook Douglas' hand. Both men then put their weapons away.

However, Jones was upset because appellant had pulled his gun out. Jones said things like, "Come fight me if you want to fight me. Don't pull the gun out." Douglas repeatedly tried to convince Jones to leave, but Jones remained upset, even though appellant had by then put his gun away in the trunk of his car. Jones walked toward appellant, and appellant opened the trunk of his car and retrieved his gun. Appellant then got into the front passenger seat of his car; Taylor was in the driver's seat.

Appellant's vehicle began backing up, and Jones walked toward it. Jones was unarmed and was not threatening or yelling at appellant. Surveillance video[1] of the parking lot shows Jones walking past the front of appellant's car, crossing toward the front passenger window, as the car reversed. When the car stopped, Jones was standing close to the front passenger window where appellant was seated, and Douglas was a few feet behind him.

Appellant's car then "paused for a second." Douglas saw one shot fired from the front passenger window, and Jones immediately fell to the ground, saying, "He shot me." Appellant's car drove off, and Douglas fired "a few shots" after it. Jones was taken to the hospital but died from the gunshot wound.

At trial, appellant took the stand in his own defense. He testified that he did not pull his own gun out until after he had seen Douglas holding his gun at his side in the parking lot. Appellant explained that he was concerned for his safety and that he shook hands with Douglas as an attempt to make peace or deescalate the situation. He also testified that after Jones confronted him about having a gun, appellant put his gun in the trunk of his car because he

---

[1] "[W]e, on appellate review, view video evidence not to determine what we think happened, but for the limited purpose of determining whether any rational factfinder could have viewed it as the trial court did." *Meade v. Commonwealth*, 74 Va. App. 796, 806 (2022).

wanted to "defuse all the problems" and leave the situation. Appellant testified that after Jones saw him put his gun away in the trunk, Jones was "really, like, trying to fight me now." Appellant stated that he did not want to fight Jones and just wanted to leave.

Appellant explained that he eventually retrieved the gun from the trunk of his car because every time his group attempted to get in their car, Jones and Douglas started "walking up towards" their car and threatening them. Appellant acknowledged that as he was going to get the gun from the trunk, the rest of his group was encouraging him to get in the car and leave. He stated that he was "equal[ly]" determined to get his gun as he was to leave the scene.

Appellant then got into the car and Taylor, who was driving, began to reverse out of the parking spot. Appellant testified that as the car reversed, Jones stood in front of the car to block it from accelerating forward. Appellant felt "trapped" and like something "was about to happen" to him.

Jones then went around to the passenger side of appellant's vehicle. Appellant saw Douglas walking up behind Jones with his gun at his side. As Douglas approached, appellant heard him say to Jones, "Come on, bro. I will air his shit out." Appellant was afraid and fired his gun once in their direction.

Appellant explained that while he fired intentionally, he did not know where he was aiming. He said that he fired his gun because he felt like "a sitting duck" and was afraid Douglas was about to shoot at their car. However, he acknowledged that Jones was not blocking appellant's car from leaving when appellant fired the gun. He also acknowledged that he had never seen Jones with a gun and that Jones had not threatened to kill him, though he maintained that Jones did threaten to "hurt" him.

Appellant testified that after he shot, his car drove off and "shots started getting fired towards our car." At the time, appellant did not realize his bullet had hit anyone. The next

- 4 -

morning, appellant learned that someone had been shot during the altercation. Appellant was "afraid" and threw the gun he had used off a bridge. Appellant was arrested later that day.

Appellant acknowledged that he was a three-time convicted felon. He explained that he had the gun on him for protection because he grew up in a neighborhood where gun violence was prevalent. He stated that he had first been shot at when he was only ten years old. When he was twelve years old, his father was shot and killed. Appellant also had several friends who were killed by gun violence.

At the close of all the evidence, appellant made a motion to strike both charges, arguing that the evidence showed self-defense rather than malice. The court denied his motion, and the jury convicted him of both charges. He was sentenced to twenty years on second-degree murder and five years on use of a firearm in the commission of murder.

## II. Sufficiency of the Evidence

Appellant's first three assignments of error relate to the sufficiency of the evidence, alleging that the trial court erred in upholding the jury's guilty verdict relating to second-degree murder because he purportedly acted in self-defense, or alternatively because he did not act with malice. He also alleges that the trial court erred in finding him guilty of use of a firearm in the commission of a felony because the evidence was insufficient to support his conviction for second-degree murder.

### A. Standard of Review

When reviewing the sufficiency of the evidence, the evidence must be considered in the light most favorable to the Commonwealth, and the judgment of the trial court may be reversed only when its decision "is plainly wrong or without evidence to support it." *Smith v. Commonwealth*, 296 Va. 450, 460 (2018) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). "[T]he relevant question is, upon review of the evidence in the light most favorable to

the prosecution, whether *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Secret v. Commonwealth*, 296 Va. 204, 228 (2018) (quoting *Dietz v. Commonwealth*, 294 Va. 123, 132 (2017)). "If there is evidentiary support for the conviction, 'the reviewing court is not permitted to substitute its own judgment, even if its opinion might differ from the conclusions reached by the finder of fact at the trial.'" *McGowan v. Commonwealth*, 72 Va. App. 513, 521 (2020) (quoting *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018)). Furthermore, the appellate courts must "discard any of appellant's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *Gerald v. Commonwealth*, 295 Va. 469, 473 (2018).

"The credibility of the witnesses and the weight accorded the evidence are matters solely for the fact finder who has the opportunity to see and hear that evidence as it is presented." *Smith v. Commonwealth*, 56 Va. App. 711, 718 (2010) (quoting *Sandoval v. Commonwealth*, 20 Va. App. 133, 138 (1995)). Credibility issues "will not be disturbed on appeal unless plainly wrong." *Id.*

### B. Self-Defense

Appellant first argues that the evidence was insufficient to support a conviction for second-degree murder because it instead showed that he acted in self-defense. "Self-defense is an affirmative defense . . . and in making such a plea, a 'defendant implicitly admits the killing was intentional and assumes the burden of introducing evidence of justification or excuse that raises a reasonable doubt in the minds of the jurors.'" *Bell v. Commonwealth*, 66 Va. App. 479, 486 (2016) (quoting *Commonwealth v. Cary*, 271 Va. 87, 99 (2006)). "Whether an accused proves circumstances sufficient to create a reasonable doubt that he acted in self-defense is a

question of fact." *Smith v. Commonwealth*, 17 Va. App. 68, 71 (1993). Appellant argues that his actions fell under either justifiable or excusable homicide in self-defense.

"Justifiable homicide in self-defense occurs where a person, without any fault on his part in provoking or bringing on the difficulty, kills another under reasonable apprehension of death or great bodily harm to himself." *Bell*, 66 Va. App. at 487 (quoting *Bailey v. Commonwealth*, 200 Va. 92, 96 (1958)). By contrast,

> [e]xcusable homicide in self-defense occurs where the accused, although in some fault in the first instance in provoking or bringing on the difficulty, when attacked retreats as far as possible, announces his desire for peace and kills his adversary from a reasonably apparent necessity to preserve his own life or save himself from great bodily harm.

*Id.* (quoting *Bailey*, 200 Va. at 96). Thus, "[j]ustifiable self-defense differs from excusable self-defense because it does not necessitate that a defendant retreat and make known his desire for peace, two requirements of excusable self-defense." *Id.* If either justifiable or excusable self-defense are proven, the defendant must be found not guilty. *Bailey*, 200 Va. at 96.

Under either justifiable or excusable self-defense,

> a defendant must show that he reasonably feared death or serious bodily harm at the hands of his victim. Whether the danger is reasonably apparent is judged from the viewpoint of the defendant at the time of the incident. The defendant must also show that he was in imminent danger of harm, that is, a showing of an overt act or other circumstance that affords an immediate threat to safety.

*Hines v. Commonwealth*, 292 Va. 674, 679 (2016). "An overt act is an act suggesting present danger which 'afford[s] a reasonable ground for believing there is a design . . . to do some serious bodily harm, and imminent danger of carrying such design into immediate execution.'" *Jones v. Commonwealth*, 71 Va. App. 70, 86 (2019) (quoting *Commonwealth v. Sands*, 262 Va. 724, 729 (2001)). "'[B]are fear that a person intends to inflict serious bodily injury on the

- 7 -

accused, however well-grounded,' is insufficient without an overt act." *Id.* (alteration in original) (quoting *Yarborough v. Commonwealth*, 217 Va. 971, 975 (1977)).

Appellant argues that Jones' killing occurred as justifiable homicide in self-defense because appellant was not at fault in "bringing on the difficulty." Appellant notes that the initial fight was between Taylor and Broadnax, that Douglas was the first person to pull out a gun, and that appellant and his group "were the first to get into their car to try and leave."

Appellant alternatively argues that if the killing was not justified, it was excused. Appellant notes that he retreated to his vehicle after shaking Douglas' hand "to make peace," that he declined to fight Jones, and that he reasonably feared for his safety when Jones blocked his car from leaving while Douglas approached with his gun.

Here, taking the evidence in the light most favorable to the Commonwealth, appellant was in his car as Jones and Douglas approached. The surveillance video introduced at trial shows Jones walking in front of appellant's car as it reversed out of its parking spot. Contrary to appellant's testimony, it does not show Jones stopping there to block the car from leaving. When the car finished reversing, its pathway was clear. While appellant testified that he felt like a "sitting duck," the group could have simply driven away.

Jones was unarmed throughout the entire incident, and according to the Commonwealth's witnesses, he was not threatening appellant or even yelling at him. While Douglas was armed, throughout the encounter he had been attempting to calm Jones and end the tension between the groups. Finally, Douglas did not have his gun out when the two men were approaching appellant's vehicle.[2] Thus, a reasonable fact-finder could conclude that appellant did not

---

[2] While appellant testified that he saw Douglas' gun in his hand when appellant shot, Douglas testified that he did not have his gun out at that point. Under the applicable standard of review, we must defer to the fact-finder's acceptance of Douglas' version of these events.

reasonably fear death or great bodily harm and that he was not in imminent danger when he shot Jones.[3]

## C. Heat of Passion

Appellant next argues that the evidence was insufficient to support his conviction because the Commonwealth did not prove that he acted maliciously. "Second-degree murder . . . is defined as a malicious killing." *Woods v. Commonwealth*, 66 Va. App. 123, 131 (2016). "In order for an act to be done maliciously, the act must be done 'wilfully or purposefully.'" *Id.* (quoting *Essex v. Commonwealth*, 228 Va. 273, 280 (1984)). "Malice is evidenced either when the accused acted with a sedate, deliberate mind, and formed design, or committed any purposeful and cruel act without any or without great provocation." *Id.* (quoting *Branch v. Commonwealth*, 14 Va. App. 836, 841 (1992)). "The trier of fact may infer malice from the deliberate use of a deadly weapon unless the evidence raises a reasonable doubt whether malice existed." *Elliot v. Commonwealth*, 30 Va. App. 430, 436 (1999).

Appellant argues that the evidence showed that he acted under the heat of passion, which would prove voluntary manslaughter rather than second-degree murder. "Voluntary manslaughter is the unlawful killing of another, 'committed in the course of a sudden quarrel, or mutual combat, or upon a sudden provocation, and without any previous grudge, and the killing is from the sudden heat of passion growing solely out of the quarrel, or combat, or provocation.'" *Woods*, 66 Va. App. at 131 (quoting *Wilkins v. Commonwealth*, 176 Va. 580, 583 (1940)). "Heat of passion refers to the furor brevis which renders a man deaf to the voice of reason." *Id.*

---

[3] "As we have often said, 'the doctrine of judicial restraint dictates that we decide cases on the best and narrowest grounds available.'" *Butcher v. Commonwealth*, 298 Va. 392, 396 (2020) (quoting *Commonwealth v. White*, 293 Va. 411, 419 (2017)). Here, we decline to decide whether appellant was at fault in "bringing on the difficulty." Appellant has failed to show that the jury erred in finding that he did not reasonably fear death or great bodily harm, or that he was in imminent danger.

(quoting *Rhodes v. Commonwealth*, 41 Va. App. 195, 200 (2003)). "[It] excludes malice when provocation reasonably produces fear [or anger] that causes one to act on impulse without conscious reflection." *Id.* (alterations in original) (quoting *Rhodes*, 41 Va. App. at 200). "Malice and heat of passion cannot coexist." *Id.* (quoting *Turner v. Commonwealth*, 23 Va. App. 270, 275 (1996)).

Appellant argues that he did not know Jones, did not want to fight him, and wanted only to leave the 7-Eleven. He testified that he fired his gun because he was scared, not because he wanted to hurt or kill anyone. Appellant argues that his group attempted to drive away, but Jones "immediately stood in front of the car blocking them in." Appellant concludes that he had "no time . . . to reflect" when Jones and Douglas "escalated the situation" by moving toward the car and that he "simply reacted to the sudden movements of [Jones] and [Douglas]" when he fired his weapon. He argues that this was reasonable provocation sufficient to show heat of passion rather than malice.

However, a reasonable fact-finder could conclude that Jones' and Douglas' approach did not reasonably produce such fear that appellant acted on impulse. The surveillance video shows that, while Jones was briefly in front of appellant's car, he did not remain there but instead continued to approach the passenger side window. Appellant had a gun and was in an unobstructed vehicle that was already in the process of leaving; the Commonwealth's evidence was that neither Jones nor Douglas were holding weapons as they approached the car on foot. In the light most favorable to the Commonwealth, the fact-finder was not plainly wrong in concluding that appellant acted with malice rather than out of the heat of passion.

### D. Use of a Firearm

Appellant's third assignment of error alleges that because the evidence was insufficient to convict him of second-degree murder, it was therefore insufficient to convict him of use of a

firearm in the commission of second-degree murder. Because appellant's argument here relies on the success of one of his first two assignments of error, and those assignments of error must fail, his third assignment of error must fail as well.

### III.  Post-Trial Motions

Appellant assigns error to the trial court's denial of his request for a mistrial, alleging that Rule 3A:17 was violated by improper jury polling and a non-unanimous verdict. He also assigns error to the trial court's denial of his request to subpoena the two jurors that were not polled.

### A.  Jury Polling

After the court clerk read the guilty verdicts out loud, the jury was collectively asked to confirm their verdicts. Appellant then timely requested the court to poll the jury; however, two of the jurors were inadvertently not asked to confirm their verdicts. At the time, appellant did not object to this error. The jury then went through the sentencing phase and was individually polled again after they announced their sentence. This time, each juror confirmed the sentences. There was no suggestion of dissent from the jurors at either polling.

On April 19, 2021—fourteen months after the jury trial but before the final sentencing hearing—appellant filed a motion to set aside the verdict based on the faulty jury polling at the guilt phase. At the hearing on his motion, appellant acknowledged that he did not move for a mistrial at the time of the flawed polling because he did not realize that not all the jurors had been polled.[4]

Given appellant's concerns, the two unpolled jurors were summonsed to court; however, they did not come. The court then held a hearing as to whether the jurors should be summonsed

---

[4] A defendant must make a motion for mistrial relating to the jury "before the jury retires or it 'is untimely and properly refused.'" *Maxwell v. Commonwealth*, 287 Va. 258, 268 (2014) (quoting *Cheng v. Commonwealth*, 240 Va. 26, 39 (1990)). *See also Kenner v. Commonwealth*, 299 Va. 414, 429-30 (2021) (finding that the guilt phase and sentencing phases are distinct for purposes of polling jurors).

again, and ultimately the court denied appellant's motion to issue new summonses for the two jurors.

The court also denied appellant's motion for a mistrial,[5] finding that although the two jurors were not individually polled, the court was "satisfied" that the guilty verdicts were unanimous. The court explained that the trial transcript showed that after the clerk read the guilty verdicts, the jury was asked, "Is this your verdict?" and "So say you all?" and collectively responded "Yes" to each question. The transcript also showed that after these questions, the trial judge stated, "It does appear that each of the jurors has acknowledged that each of those verdicts is his or her verdict." The judge explained that this statement was based on "the court's personal observation" of each juror as they were asked these questions. The court concluded: "There was no question and remains no question in the court's mind that those were the unanimous verdicts of the jury and of each individual juror at the time." The court found that appellant had "received substantial due process in this matter" and "was found guilty by a unanimous jury," and it denied appellant's motion based on these findings.

### B. Rule 5A:18 and its Exceptions

Appellant's motion for mistrial was untimely under our contemporaneous objection rule, unless an exception is established. Rule 5A:18 states in pertinent part: "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." "Rule 5A:18 applies to bar even constitutional claims." *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998). "The main purpose of the contemporaneous

---

[5] The record shows that appellant filed a written motion to set aside the verdict. Appellant later asked the judge to declare a mistrial. The court's August 2021 order reflects that it denied both appellant's motion to set aside the verdict and his motion for a mistrial. Because appellant's assignment of error addresses only the motion for a mistrial, we do not address the trial court's ruling on the motion to set aside the verdict.

objection rule is to alert the trial judge to possible error so that the judge may consider the issue intelligently and take any corrective actions necessary to avoid unnecessary appeals, reversals and mistrials." *Ludwig v. Commonwealth*, 52 Va. App. 1, 10 (2008).

Here, appellant did not object to the flawed polling at the time it occurred—his objection came a full fourteen months after the incident. He therefore requests that we apply the good cause or ends of justice exceptions to Rule 5A:18.

"The good cause exception is applied when an appellant did not have the opportunity to object to an alleged error during the proceedings below." *Flanagan v. Commonwealth*, 58 Va. App. 681, 694 (2011). Here, appellant had the opportunity to object but simply failed to notice the error at the time; therefore, the good cause exception does not apply.

"The ends of justice exception to Rule 5A:18 is narrow and is to be used sparingly." *Id.* (quoting *Copeland v. Commonwealth*, 42 Va. App. 424, 442 (2004)). "In order for the exception to apply, '[t]he record must affirmatively show that a miscarriage of justice has occurred, not that a miscarriage *might have* occurred.'" *Id.* at 695 (emphasis added) (quoting *Akers v. Commonwealth*, 31 Va. App. 521, 527 n.2 (2000)).

Here, the jury was collectively asked twice to confirm the guilty verdicts for each charge. Afterwards, the trial judge stated that each juror had acknowledged the validity of the announced verdicts. The judge based this finding on "the court's personal observation of each of the jurors in the jury box . . . ." The trial judge made a factual finding that the jury was unanimous in finding appellant guilty and noted that there were no physical or audible indications that any of the jurors disagreed with the guilty verdicts. Additionally, the jury was individually polled after their sentences were announced and they each agreed that those sentences were in fact their verdicts.

We note that this factual situation differs from that found in *Webb v. Commonwealth*, 64 Va. App. 371 (2015). In *Webb*, the jurors were individually polled after the jury's sentence was announced, and one juror responded that the sentence was not that juror's verdict. *Id.* at 374. However, neither party nor the trial court objected or responded in any way. *Id.* This Court found that a miscarriage of justice had occurred when the trial court accepted a non-unanimous sentencing verdict, and thus applied the ends of justice exception of Rule 5A:18. *Id.* at 378-79.

Unlike in *Webb*, here appellant has only shown that a miscarriage of justice *might have* occurred. *See Flanagan*, 58 Va. App. at 695. It is possible that, had the two jurors been individually polled, they might have responded that their verdicts were not guilty. However, there is no indication from the record that they *would have* responded in this way. Instead, the trial court found that there was no indication that any juror was not in agreement with the verdicts and concluded that the jury was unanimous in finding appellant guilty. The record supports the trial court's conclusion. On these facts, we cannot say that a miscarriage of justice occurred, and therefore the ends of justice exception is not available.[6] *See Singleton v. Commonwealth*, 14 Va. App. 947, 950 (1992).

---

[6] We note that, when considering an allegation of juror misconduct, "[t]he trial court properly may summon one or more jurors to testify under oath in open court and to answer relevant questions propounded by the court and counsel about what had transpired." *Commercial Union Ins. Co. v. Moorefield*, 231 Va. 260, 265 (1986). Where juror misconduct is alleged, the failure to summons the jurors is subject to an abuse of discretion standard of review. *Harris v. Commonwealth*, 13 Va. App. 47, 51 (1991). While here the defense motion focused on a polling irregularity instead of juror misconduct, we find that the abuse of discretion standard is also appropriate in this setting. Here, the trial court declined to re-summons the jurors, noting that the court had personally observed each of the jurors as they were collectively asked to confirm the unanimity of the guilty verdicts. The court stated that there was "no question" that each juror had reached verdicts of guilty. Under these facts, even if the mistrial issue were preserved, the trial court's decision not to re-summons the two jurors who were not individually polled was appropriate and not an abuse of discretion.

IV.  Conclusion

The jury was not plainly wrong or without evidence to support it in finding appellant guilty of second-degree murder.  When the evidence is viewed in the light most favorable to the Commonwealth, appellant was sitting in his car with his gun.  While Jones and Douglas were approaching appellant's window, Jones was unarmed and Douglas' gun was in his pocket.  A reasonable fact-finder could conclude that appellant did not reasonably fear death or great bodily harm, that appellant was not in imminent danger, and therefore that appellant was not acting in self-defense or under the heat of passion when he pulled the trigger.  Thus, appellant's second-degree murder conviction was not error.

Because the jury did not err in finding appellant guilty of second-degree murder, it also did not err in finding him guilty of use of a firearm in the commission of second-degree murder.

Finally, appellant has waived his arguments regarding jury polling under Rule 5A:18. Because there is no indication that any of the jurors did not agree with the guilty verdicts, appellant has failed to show that a miscarriage of justice occurred.  We therefore decline to apply the ends of justice exception to Rule 5A:18.

*Affirmed.*