COURT OF APPEALS OF VIRGINIA

UNPUBLISHED

Present:   Judges Humphreys, Huff and Lorish
Argued at Norfolk, Virginia


ROBERT LEE COATES

                                                    MEMORANDUM OPINION* BY
v.        Record No. 0380-22-1                      JUDGE LISA M. LORISH
                                                    JUNE 6, 2023

COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF THE CITY OF WILLIAMSBURG AND
                        COUNTY OF JAMES CITY
                  Michael E. McGinty, Judge Designate

            Andrew M. Sacks (Stanley E. Sacks; Sacks & Sacks, P.C., on brief),
            for appellant.

            Lauren C. Campbell, Assistant Attorney General (Jason S. Miyares,
            Attorney General, on brief), for appellee.


        Robert Lee Coates ("Coates") was convicted of the first-degree murder of his wife of 56

years, Irene Coates ("Irene"), and the use of a firearm in the commission of a felony. Coates argues

on appeal that the Commonwealth's evidence was insufficient to prove the requisite intent for first-

degree murder and that the trial court abused its discretion when it denied his motion for a

continuance the morning of trial. We affirm Coates's convictions.

_____

* This opinion is not designated for publication. *See* Code § 17.1-413.

BACKGROUND[1]

On May 4, 2019, David Freeman reported to the scene of a power outage to perform repairs. While there, he saw Coates and Irene sitting together outside of their house. Freeman eventually realized he would be unable to restore power to the house that day and informed the Coates's adult daughter, who was outside. She told Freeman that the house was her parents' and escorted him toward the house so he could inform Coates and Irene about the continued power outage. As Freeman approached the house, he saw Coates burst through the front door and say, "I just killed that bitch."[2] Coates then sat in a chair on his patio. Coates's daughter entered the house and ran out screaming seconds later. Freeman retreated and called 911.

Coates went to his neighbor's house and told his neighbor that he shot his wife with a shotgun, explaining that "he couldn't take it anymore." The neighbor ran to the Coates's house and saw Irene on the living room floor. The police arrived moments later and found Irene in a pool of blood with a baseball-sized hole in her upper thigh. An officer attempted to give aid but could not stop the bleeding. As medics arrived, the officer carried Irene down the road to meet them. The medics pronounced her dead soon after.

Coates was calm and cooperative with officers at the scene. One officer searched Coates and found a cell phone on his person. Officers found a shotgun shell in the living room and a

---

[1] The evidence in this case must be "considered in the light most favorable to the Commonwealth, as the prevailing party below." *Jacobs v. Commonwealth*, 61 Va. App. 529, 535 (2013). This Court "regard[s] as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence." *McGowan v. Commonwealth*, 72 Va. App. 513, 516 (2020).

[2] Freeman testified that Coates said either "I just killed that bitch" or "I'm going to kill that bitch." The uncontroverted evidence shows Irene was already shot before Coates made this statement; as the trial court pointed out, it is unlikely Coates said, "I'm going to kill that bitch," given the timing. In the light most favorable to the Commonwealth, we assume Coates said, "I just killed that bitch," although our decision and reasoning would be the same even if Coates instead said, "I'm going to kill that bitch," given the other evidence of guilt.

shotgun in a bedroom closet. They also found a knife in the living room. The medical examiner determined from the autopsy that Irene died from the shotgun wound hitting her femoral artery and that the shotgun was fired from a far enough distance that the discharge did not leave soot or powder on her body.

Coates was charged with first-degree murder, Code § 18.2-32, and use of a firearm in the commission of a felony (first offense), Code § 18.2-53.1. Coates pleaded not guilty to all charges and opted for a bench trial. On the morning of trial in December 2020, Coates moved to continue his case. Coates's counsel explained that Coates had been transferred from jail to the hospital the day before. Coates had complained of "extremely elevated blood pressure," but the doctors did not diagnose him with any condition. He was released from the hospital after about three hours. Coates's counsel proffered that Coates was feeling "dizzy" with "headaches" and was not sure "if he [could] really sit through and hear and assist with his defense." The Commonwealth objected to a continuance because one witness had already died during the 18 months before trial, and nine others, including the medical examiner, were present at court to testify that morning. The court denied the motion to continue. It explained:

> [I]t sounds like [Coates] was transported by the jail staff to the hospital last night and in a fairly relatively short period of time he was released by the medical personnel there from the hospital back to the jail. I don't discount the possibility that when you're facing a trial as serious as this one that there would be some anxiety and elevated blood pressure and those things, but at this point the Court is going to deny the motion to continue . . . .

At trial, in addition to the evidence summarized above, Coates testified in his own defense. He testified that he and Irene had "several arguments" in the days before her death and that she had been "real mad for several days" and nagging him constantly. On the day of the incident, Coates said Irene "was very smart-alecky, smart-mouthing." He testified that Irene cursed at him for several minutes then threatened him with a kitchen knife, saying, "I could cut you, you damn

bitch." In response, Coates said, "you can't talk to me like that," then went to his bedroom and retrieved his shotgun. He entered the living room with his finger on the trigger. He testified that Irene dropped her knife and grabbed the shotgun, causing it to fire. He also said he did not remember returning the gun to the closet, going to his neighbor's house, or making any statements about the shooting. He argued that the shooting was an accident and the evidence failed to prove he acted with the requisite intent for first-degree murder.

The trial court found Coates's testimony "not very convincing" and found that his actions and statements proved he intentionally shot and killed Irene. It found that it could infer malice from Coates's use of a deadly weapon and statements after the shooting. And it found premeditation because Coates "went several rooms away, got that shotgun, walked back and was angry . . . . He was fed up for whatever reason." The court thought Freeman's testimony on the immediate aftermath of the shooting was "rather compelling," in that Coates showed no sign of surprise when he exited the house after the shooting and Freeman—not Coates, despite having a cell phone on him—called 911.

The court convicted Coates of first-degree murder and use of a firearm in the commission of a felony. It sentenced Coates to 53 years of incarceration with 25 years suspended. Coates moved to set aside the verdict for insufficiency of the evidence and the denial of the continuance; the court heard argument then denied the motion. Coates appeals on the same grounds.

ANALYSIS

I. First-Degree Murder Conviction

Coates argues in the alternative that the evidence was (1) insufficient to convict him of any offense because it created a reasonable doubt as to whether Irene's death was an accident; (2) insufficient to support a higher degree of homicide than involuntary manslaughter because his intent did not rise above criminal negligence; (3) insufficient to support a higher degree of homicide than

voluntary manslaughter because the evidence created a reasonable doubt about whether he had malice; and (4) insufficient to support a higher degree of homicide than second-degree murder because the evidence created a reasonable doubt about whether he acted with premeditation. In other words, Coates argues the evidence cannot support any offense greater than involuntary manslaughter, or in the alternative, that if the Commonwealth proved he intended to shoot Irene, that the evidence fell short of that required for any degree of murder.

### a. Standard of Review

"On review of the sufficiency of the evidence, 'the judgment of the trial court is presumed correct and will not be disturbed unless it is plainly wrong or without evidence to support it.'" *Ingram v. Commonwealth*, 74 Va. App. 59, 76 (2021) (quoting *Smith v. Commonwealth*, 296 Va. 450, 460 (2018)). We ask only whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Yoder v. Commonwealth*, 298 Va. 180, 182 (2019)). If evidence supports the conviction, we are "not permitted to substitute [our] own judgment, even if [our] opinion might differ from the conclusions reached by the finder of fact at the trial." *Chavez v. Commonwealth*, 69 Va. App. 149, 161 (2018) (quoting *Banks v. Commonwealth*, 67 Va. App. 273, 288 (2017)).

"Intent may, and most often must, be proven by circumstantial evidence and the reasonable inferences to be drawn from proven facts are within the province of the trier of fact." *Sarka v. Commonwealth*, 73 Va. App. 56, 67 (2021) (quoting *Fleming v. Commonwealth*, 13 Va. App. 349, 353 (1991)). "In determining a defendant's intent, '[c]ircumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt.'" *Id.* (quoting *Coleman v. Commonwealth*, 226 Va. 31, 53 (1983)).

Finally, we accept the factfinder's findings on witness credibility unless the testimony is inherently incredible. *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006). The factfinder is "entitled to disbelieve the self-serving testimony of the accused and to conclude that the accused is lying to conceal his guilt." *Brown v. Commonwealth*, 75 Va. App. 388, 414 (2022) (quoting *Marable v. Commonwealth*, 27 Va. App. 505, 509-10 (1998)).

### b. Sufficiency of the Evidence

The evidence was sufficient for a rational trier of fact to find Coates murdered Irene, rather than committing manslaughter or an excusable accidental killing. Murder is a homicide committed with malice. *Edwards v. Commonwealth*, 68 Va. App. 284, 297 (2017). Malice exists "in the 'doing of a wrongful act intentionally, or without just cause or excuse, or as a result of ill will.'" *Tizon v. Commonwealth*, 60 Va. App. 1, 11 (2012) (quoting *Dawkins v. Commonwealth*, 186 Va. 55, 61 (1947)). Malice may be "inferred from the deliberate use of a deadly weapon unless, from all the evidence, there is reasonable doubt as to whether malice existed." *Williams v. Commonwealth*, 64 Va. App. 240, 251 (2015). That inference is "bolster[ed]" by "[t]aking the steps necessary to locate and obtain a weapon." *Morris v. Commonwealth*, 17 Va. App. 575, 578 (1994).

An intentional killing is not murder, but voluntary manslaughter, if committed with provocation in the heat of passion instead of malice. *See Rhodes v. Commonwealth*, 41 Va. App. 195, 200 (2003) ("[W]here a homicide is committed in the course of a sudden quarrel, or mutual combat, or upon a sudden provocation and without any previous grudge, and the killing is from the sudden heat of passion growing solely out of the quarrel, or combat, or provocation, it is not murder, but [voluntary] manslaughter . . . ." (alterations in original) (quoting *Wilkins v. Commonwealth*, 176 Va. 580, 583 (1940))). "Heat of passion excludes malice when provocation

reasonably produces fear that causes one to act on impulse without conscious reflection." *Graham v. Commonwealth*, 31 Va. App. 662, 671 (2000).

The trial court first found that Coates intentionally killed Irene. The court cited testimony from Coates, Freeman, and Coates's neighbor that Coates was angry after the incident, including his statement, "I just killed that bitch." It also gave weight to Coates's decision not to call 911 despite having a cell phone on him. The court disbelieved Coates's testimony that Irene was wielding a knife and that the two had a struggle over the gun, as Coates spoke "no words about this being an accident or a knife or any of those words to that effect" in the immediate aftermath. The court also found it "almost convenient" that Coates could testify to his version of the shooting in detail but then claim he did not recall his incriminating statements or actions after the shooting. Coates's testimony that he and Irene struggled over the gun was called into further doubt by the medical examiner's finding that the shotgun was not fired at close range. The court permissibly disbelieved Coates's own testimony that the killing was accidental given the contravening evidence. *See Brown*, 75 Va. App. at 414 (the factfinder determines witness credibility).

The court then found it could infer malice from Coates's use of a deadly weapon. *See Morris*, 17 Va. App. at 578 (taking steps to find a weapon bolsters the permissible inference that defendant acted with malice by using a deadly weapon). The court also inferred malice from Coates's statements after the shooting that he "just killed that bitch" and telling his neighbor he shot Irene because he "couldn't take it anymore." Coates testified on cross-examination that Irene had been constantly nagging him in the days leading up to the incident, which undercuts his suggestion that the homicide was committed during a "sudden quarrel" or "sudden provocation and without any previous grudge." *Rhodes*, 41 Va. App. at 200. And he testified that as he retrieved his shotgun and returned to the living room—with the gun loaded, his finger

at the trigger, and the safety off—he was thinking, "I'm going back to tell my wife that she can't do this to me." That testimony suggests "conscious reflection" that undercuts heat of passion. *See Graham*, 31 Va. App. at 671. The court was entitled to disbelieve Coates's self-serving narrative that he was acting only in response to the provocation of Irene threatening him with a knife. The court's finding that Coates intentionally killed Irene with malice—that is, murdered her—was not plainly wrong or without evidence to support it. *See Ingram*, 74 Va. App. at 76.

Finally, there was sufficient evidence for a rational trier of fact to find Coates acted with premeditation, supporting his conviction for first-degree murder. In Virginia, malicious homicide is second-degree murder by default; it rises to first-degree murder only if the Commonwealth proves the homicide was willful, deliberate, and premeditated. Code § 18.2-32; *see Willis v. Commonwealth*, 37 Va. App. 224, 230-31 (2001). "Premeditated murder . . . contemplates: (1) a killing; (2) a reasoning process antecedent to the act of killing, resulting in the formation of a specific intent to kill; and (3) the performance of that act with malicious intent." *Fields v. Commonwealth*, 73 Va. App. 652, 674 (2021) (quoting *Rhodes v. Commonwealth*, 238 Va. 480, 486 (1989)). That reasoning process need not be lengthy; premeditation "may be formed only a moment before the fatal act is committed provided the accused had time to think and did intend to kill." *Rhodes*, 238 Va. at 485 (quoting *Giarratano v. Commonwealth*, 220 Va. 1064, 1074 (1980)); *see also Akers v. Commonwealth*, 216 Va. 40, 48 (1975) ("It is the will and purpose to kill, not necessarily the interval of time, which determine the grade of the offense."). "[E]vidence of a mortal wound inflicted by a deadly weapon with little or no provocation creates an inference from which the trier of fact may conclude that the killer acted with premeditation." *Morris*, 17 Va. App. at 578.

The trial court found Coates acted with premeditation because, before shooting Irene with a shotgun, Coates "went several rooms away, got that shotgun, walked back and was

angry . . . . He was fed up for whatever reason." While Coates's actions occurred only a short time before he shot Irene, enough time elapsed for Coates to think and form the specific intent to kill under our precedent. Virginia courts have consistently affirmed first-degree murder convictions on similar facts. For example, in *Kirby v. Commonwealth*, 50 Va. App. 691, 701 (2007), this Court affirmed a first-degree murder conviction when the defendant went to a closet to retrieve a loaded firearm while he and his wife were arguing, then shot her at close range, and admitted he killed her because he "did not want to continue taking any more verbal harassment from her." *See also Jackson v. Virginia*, 443 U.S. 307, 325 (1979) (finding premeditation when the defendant shot the victim "at close, and thus predictably fatal, range"); *Schmitt v. Commonwealth*, 262 Va. 127, 143 (2001) (finding premeditation when the defendant shot the victim at close range); *see also Harrison v. Commonwealth*, 79 Va. 374, 378-79 (1884) (rejecting claim that victim's "fussy and quarrelsome" character "would justify any person to kill him who should so feel inclined"). The Commonwealth can prove intent, including premeditation in a first-degree murder case, by circumstantial evidence. *See, e.g.*, *Fields*, 73 Va. App. at 674 (finding premeditation by circumstantial evidence). The court's finding, based on all the circumstances, that Coates murdered Irene with premeditation was not plainly wrong or without evidence to support it. *See Ingram*, 74 Va. App. at 76.

## II. Denial of Continuance Motion

Coates also challenges the trial court's decision to deny his motion for a continuance despite his health condition the morning of trial. The decision to grant a motion for a continuance is within the discretion of the circuit court and must be considered based on the circumstances unique to each case. *Bailey v. Commonwealth*, 73 Va. App. 250, 259 (2021). Under the abuse of discretion standard, "we do not substitute our judgment for that of the trial court. Rather, we

consider only whether the record fairly supports the trial court's action." *Id.* at 265 (quoting *Grattan v. Commonwealth*, 278 Va. 602, 620 (2009)).

Coates asserts that any of four circumstances alone show the trial court erred in denying his continuance: (1) Coates's counsel's representation to the court that Coates was "not ready at [that] point" to proceed with trial given his overnight stint at the hospital; (2) Coates's counsel's representation that Coates felt "dizzy," and was unsure if he could "sit through and hear and assist with his defense"; (3) Coates's counsel's concerns about whether he could call Coates as a witness given his health condition; and (4) Coates's statement to his counsel that "he wasn't sure if he could really listen and comprehend everything that was going on." Coates distills these circumstances to the proposition that "to compel an acutely ill defendant, charged with first degree murder, with an age of 75 at the time of the alleged offenses, and in the face of good-faith representations by an experienced Officer of the Court who cannot be ready because of his client's compromised physical and mental conditions" to go forward with trial is an abuse of discretion that "prejudiced [Coates's] right to a fair trial and compromised his ability to marshal favorable evidence in the form of his own testimony."

A party challenging a court's denial of a motion for a continuance "must demonstrate both an 'abuse of discretion *and* resulting prejudice.'" *Bailey*, 73 Va. App. at 265 (quoting *Haugen v. Shenandoah Valley Dep't of Soc. Servs.*, 274 Va. 27, 34 (2007)). "The absence of one renders inconsequential the presence of the other." *Bolden v. Commonwealth*, 49 Va. App. 285, 290 (2007), *aff'd*, 275 Va. 144 (2008). Prejudice "may not be presumed; it must appear from the record." *Id.* (quoting *Lowery v. Commonwealth*, 9 Va. App. 304, 307 (1990)).

Coates fails to point to anywhere in the record showing specific prejudice that he suffered from the court denying his continuance request. *See, e.g.*, *Bailey*, 73 Va. App. at 266-67 (finding no prejudice even when defendant specifically argued that he needed a continuance to call two

more witnesses, because the proffered testimony of those witnesses would not have negated the Commonwealth's evidence); *Bolden*, 49 Va. App. at 290 ("In this case, we need not address [defendant's] abuse-of-discretion argument because we find no merit in his claim of prejudice."). Even without Coates's testimony, substantial evidence supported Coates's convictions. And he capably testified and presented his version of the events. Thus, we "need not address" Coates's "abuse-of-discretion argument because we find no merit in his claim of prejudice." *Bolden*, 49 Va. App. at 290; *see also Commonwealth v. Swann*, 290 Va. 194, 196 (2015) ("The doctrine of judicial restraint dictates that we decide cases 'on the best and narrowest grounds available.'" (quoting *McGhee v. Commonwealth*, 280 Va. 620, 626 n.4 (2010))).

CONCLUSION

For these reasons, we affirm the trial court's judgment.

<em>Affirmed.</em>